## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

_____
                                          )
ABIMAEL PEREZ, ISAIN CERON,              )
MISAEL MORALES, ULBER MORALES,           )
CARLOS GONZALEZ, and JORGE               )
MELCHOR,                                 )
        *Plaintiffs*,                          )          No. 3:15-cv-00642
                                          )
      v.                              )          **AMENDED COMPLAINT**
                                          )
GOODFELLAS CAFE LLC, AC702 LLC,          )
GENNARO IANNACCONE, ANDREA               )
COPPOLA, and FRANCESCO AURIOSO,          )          July 30, 2015
        *Defendants*.                        )
_____)


      The Plaintiffs, by and through their counsel, file this amended complaint pursuant to Fed.

R. Civ. P. 15(a)(1)(B) and allege the following on information and belief:

      The owners and managers of the Goodfellas Restaurant in New Haven, Connecticut are

repeat violators of labor and employment law. They have engaged in a pattern of abuse and

illegal activities against their workers, refusing to pay them in accordance with state and federal

minimum wage and overtime laws, subjecting them to regular emotional humiliation, and

violating their fundamental civil rights. The Defendants have also employed fraud and deception

to conceal their crimes from the authorities and have threatened and intimidated their workers in

order to prevent them from seeking legal redress.

      The Defendants created a hostile and hateful working environment, berating and

belittling their workers with racist, xenophobic, and homophobic slurs, while subjecting them to

physically punishing conditions. Defendant Gennaro "Gerry" Iannaccone demanded the Workers

keep the kitchen door open in the dead of winter, denied them meal breaks, required them to lift

dangerously heavy boxes without proper equipment, and forced them work with sharp items and hot surfaces without protection in an exceptionally harried and careless atmosphere.

Federal officials have twice investigated Goodfellas Restaurant and Defendants, and each time found numerous violations of labor and employment law. At the end of each investigation, Defendants promised to abide by the law, but they continued to operate a business built on exploitation and lawlessness. Plaintiffs Abimael Perez, Isain Ceron, Misael Morales, Ulber Morales, Carlos Gonzalez, and Jorge Melchor, all former employees of Goodfellas Restaurant, now initiate this action to recover monies owed to them, to demand compensation for physical and emotional injuries, and to bring the Defendants' criminal activities to an end.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to this action occurred within this district, and Defendants are located, reside, or do business in this district. Venue is also proper pursuant to 28 U.S.C. § 1391(c), as Defendants Goodfellas Cafe LLC and AC702 LLC are subject to personal jurisdiction in the State of Connecticut.

## PARTIES

3.      Plaintiff Abimael Perez worked at Goodfellas Restaurant approximately from July 14, 2014 until January 1, 2015. At all relevant times, Mr. Perez worked for the benefit of Defendants and was a resident of the State of Connecticut.

4.      Plaintiff Ulber Morales, also known as Adin Morales, worked at Goodfellas

Restaurant approximately from March 15, 2014 until July 27, 2014. At all relevant times, Mr. Morales worked for the benefit of Defendants and was a resident of the State of Connecticut.

5.      Plaintiff Misael Morales worked at Goodfellas Restaurant approximately from April 25, 2014 until January 1, 2015. At all relevant times, Mr. Morales worked for the benefit of Defendants and was a resident of the State of Connecticut.

6.      Plaintiff Isain Ceron, also known as Antonio, worked at Goodfellas Restaurant approximately from January 6, 2015 until March 7, 2015. At all relevant times, Mr. Ceron worked for the benefit of Defendants and was a resident of the State of Connecticut.

7.      Plaintiff Carlos Gonzalez worked at Goodfellas Restaurant approximately from January 14, 2015 until March 4, 2015. At all relevant times, Mr. Gonzalez worked for the benefit of Defendants and was a resident of the State of Connecticut.

8.      Plaintiff Jorge Melchor worked at Goodfellas Restaurant approximately from January 6, 2014 until June 29, 2014 and again approximately from December 1, 2014 until June 2, 2015. At all relevant times, Mr. Melchor worked for the benefit of Defendants and was a resident of the State of Connecticut.

9.      Defendant Goodfellas Cafe, LLC is a Limited Liability Company that registered in Connecticut in 2005 and that, at least until 2011, owned and operated a restaurant in New Haven, Connecticut called Goodfellas Restaurant, which was located at 758 State Street, New Haven ("Goodfellas Restaurant" or "the Restaurant"). Upon information and belief, Goodfellas Cafe LLC continued to be an owner and operator of Goodfellas Restaurant during times relevant to this action.

10.      Defendant AC702, LLC is a Limited Liability Company that registered in Connecticut in 2011 and that owns and operates a restaurant in New Haven, Connecticut called

Goodfellas Restaurant and that is located at 702 State Street, New Haven (also referred to hereafter as "Goodfellas Restaurant" or "the Restaurant").

11.     Defendant Gennaro Iannaccone is an owner and head chef of Goodfellas Restaurant, as well as the sole member of Goodfellas Cafe, LLC which operated Goodfellas Restaurant at 758 State Street, and continues to have an ownership interest in the restaurant. Defendant Iannaccone is an individual owner and operator of Goodfellas Restaurant separate and distinct from the Goodfellas Cafe LLC and was a resident of the State of Connecticut at all relevant times.

12.     Defendant Andrea Coppola is an owner of Goodfellas Restaurant and is the sole member of AC702 LLC, which has an ownership interest in Goodfellas Restaurant. Defendant Coppola also manages the restaurant's business affairs, sharing an office with Defendant Iannaccone. Defendant Coppola is an individual owner and operator of Goodfellas Restaurant separate and distinct from the AC702 LLC and was a resident of the State of Connecticut at all relevant times.

13.     Defendant Francesco Aurioso is the General Manager of Goodfellas Restaurant. Defendant Aurioso managed employees and was responsible for hiring, firing, and paying employees. Defendant Aurioso was a resident of the State of Connecticut at all relevant times.

## STATEMENT OF FACTS

14.     Gennaro Iannaccone and Andrea Coppola have been romantic partners and are co-owners of Goodfellas Restaurant, a bar and restaurant operating at 702 State Street in New Haven, Connecticut and have operated the restaurant jointly since 2011. Iannaccone and Coppola also jointly operated Goodfellas Restaurant at its previous location in New Haven, 758 State

4

Street, from 2005 to 2011.

15.    The website for Goodfellas Restaurant describes Defendants Iannaccone and Coppola each as an "owner" of the restaurant (screenshots from July 30, 2015).





16.     Iannaccone is also the head chef of Goodfellas Restaurant and supervises workers in the back of the house, including bussers and those working in the kitchen, a group that includes Plaintiffs.

17.    Francesco Aurioso is a manager at Goodfellas Restaurant, supervising workers in the front of the house and is also responsible for paying workers their wages. At all, relevant times, Aurioso managed employees to serve the interests of Defendants Iannaccone and Coppola, owners of the restaurant.

18.    Iannaccone, Coppola, and Aurioso (the "individual Defendants") all participated in overseeing the operations of the Restaurant at all relevant times.

19.    All three individual Defendants have the power to hire, fire, supervise, and determine amount of pay, role, and responsibilities of the employees of Goodfellas Restaurant.

20.    All three individual Defendants collaboratively determined work schedules for all Plaintiffs.

21.    For all relevant times, the Defendants failed to keep adequate records as required by law of hours worked by Plaintiffs Perez, Ceron, Morales, Morales, Gonzalez, and Melchor (the "Workers") and wages paid to them.

22.    Defendants made a significant portion of the Restaurant's business transactions in cash. For example, Defendants conducted a substantial portion of payroll, both to these and other Restaurant workers, via cash transactions.

23.    At all relevant times, Goodfellas Restaurant had an annual gross volume of sales or business done not less than $500,000.

24.    At all relevant times, each Defendant, each Plaintiff, and other employees handled, sold, or otherwise worked on goods that moved in or were produced for interstate commerce.

25.    Defendants required the Workers to arrive at work at 11:00 A.M., and to work until approximately 11:00 P.M. or 12:00 A.M., and sometimes even later, six days a week. This

resulted in a total workweek of approximately seventy-two hours for each Worker.

26.     None of the Workers ever observed any notices posted conspicuously in the restaurant that explained the Fair Labor Standards Act, as prescribed by the Wage and Hour Division and required by law.

27.     The Workers also did not observe any notices posted conspicuously in the restaurant that explained Connecticut laws regarding minimum wage, sexual harassment, worker's compensation, electronic monitoring, unemployment compensation, or Connecticut Occupational Safety & Health Act, as prescribed by the Connecticut Department of Labor and required by law.

**Defendant's History of Labor Law Violations**

28.     The U.S. Department of Labor has investigated Defendants on at least two previous occasions.

29.     In 2009, the Labor Department's Wage and Hour Division investigated Goodfellas and Defendant Iannaccone for violations of labor law. The investigation uncovered serious violations of minimum wage and overtime law, as well as recordkeeping requirements. The Labor Department found Goodfellas to have violated the rights of three workers, and forced the Restaurant to pay $7,000 in back wages.

30.     At the conclusion of the investigation, Defendant Iannaccone promised to abide by the law, assuring the investigator that in the future he would keep adequate records and pay workers minimum wage and overtime.

31.     Defendant Iannaccone's promises were meaningless. Less than a year later, in 2010, the Labor Department initiated a new investigation of Goodfellas' illegal activity.

32.     The second investigation uncovered even more serious violations than the first. In

addition to continued violations of recordkeeping laws, the Labor Department found Goodfellas Restaurant, Defendant Iannaccone, and Defendant Aurioso to have violated the workplace rights of four workers, and forced them to pay $23,636.10 in back wages.

33.    At the conclusion of the second Labor Department investigation, Defendant Iannaccone again promised to follow the law. He broke his word again, however, when he failed to pay the Workers minimum wage and overtime and compensated them off the books.

34.    Seven months after the completion of the investigations, AC702 LLC was formed with Andrea Coppola as its sole member. The Restaurant moved locations, but kept the same name and management structure.

**Plaintiff Misael Morales**

35.    Defendant Iannaccone hired Mr. M. Morales on or about April 25, 2014 and he worked at the restaurant until Defendants fired him on December 31, 2014.

36.    Mr. M. Morales typically worked from approximately 11:00 A.M. until 11:00 P.M on Sundays, Tuesdays, Wednesdays, and Thursdays, and from approximately 11:00 A.M. until 12:00 A.M. on Fridays and Saturdays.

37.    During his employment Mr. M. Morales performed a number of tasks at the restaurant, including lifting heaving boxes, moving equipment, cleaning, and preparing food.

38.    Defendants paid Mr. M. Morales a weekly wage of $500 in cash. Sometimes Defendants did not paid the full $500, and "deducted" full days from Mr. M. Morales' wages when Defendant Iannaccone alleged he had been "late" to work. Defendants did not give Mr. M. Morales pay stubs, or any other form of documentation regarding his work.

39.    Defendant Iannaccone repeatedly pulled Mr. M. Morales aside to discuss an ongoing wage theft lawsuit against Gourmet Heaven, a New Haven restaurant and grocery, in

which Mr. M. Morales was a plaintiff.

40.     On one occasion, Defendant Iannaccone approached Mr. M. Morales and offered to pay him an extra $50 a week in cash. When Mr. M. Morales asked Defendant Iannaccone why he was being given an extra $50, Defendant Iannaccone said, "I don't want any trouble," or words to that effect.

41.     Mr. Morales asked again about the $50 on a separate occasion and Defendant Iannaccone said, "I have too much going on in my life to go to court," or words to that effect. Mr. M. Morales understood this payment to be an inducement not to report Defendants' violations of the law to authorities.

42.     Defendants paid Mr. M. Morales in cash in order to avoid reporting requirements, detection of their failure to pay overtime, and applicable taxes.

43.     Mr. M. Morales has not been paid overtime, nor received compensation adequate to state and federal minimum wage requirements. He worked no fewer than approximately 2,625 hours, no fewer than approximately 1,225 of which were overtime. Defendants paid Mr. M. Morales only approximately $17,500. Defendants owe him a substantial sum in damages to compensate for these and other injuries.

44.     Mr. M. Morales performed a number of tasks while an employee at Goodfellas: mopping floors, hauling heavy boxes, helping to prepare food, and cleaning the kitchen. As part of these duties Mr. M. Morales often worked with both food products and other kitchen supplies and equipment that traveled in interstate commerce.

45.     Defendant Iannaccone's frequent use of racist and other discriminatory language produced a hostile and discriminatory workplace environment.

46.     Defendant Iannaccone often called Mr. M. Morales a "fucking Mexican" and

other derogatory racial epithets.

47.    Defendant Iannaccone also called Mr. M. Morales an "illegal" and told him that he and the other Workers "had no rights here" and "had to do whatever" Iannaccone demanded, or words to that effect. Defendant Iannaccone used this language when Mr. M. Morales objected to performing particularly dangerous physical tasks.

48.    Defendant Iannaccone forced Mr. M. Morales to move a hot pot without protection, which resulted in a burn to his arm.

**Plaintiff Abimael Perez**

49.    Defendant Iannaccone hired Mr. Perez to work at Goodfellas Restaurant starting on or about July 14, 2014. Mr. Perez worked at the restaurant until approximately January 1, 2015.

50.    Mr. Perez typically worked from approximately 11:00 A.M. until 11:00 P.M., except for Wednesdays, Thursdays, and Fridays, when he worked from approximately 11:00 A.M. until 12:00 A.M.

51.    Defendants paid Mr. Perez a weekly wage of $500 in cash. Defendants did not give him pay stubs, or any other form of documentation in regard to his work.

52.    Approximately five weeks before terminating Mr. Perez, Defendants included an extra $50 in cash given to him as his weekly pay. When Mr. Perez asked Defendant Iannaccone why he was being given $50 more, Defendant Iannaccone patted him on the back and said "It's OK," or words to that effect.

53.    Mr. Perez understood from this exchange that, in the context of discussions at the Restaurant about the Gourmet Heaven wage dispute and litigation, in which plaintiff Misael Morales was involved, this payment was an inducement not to provide information and

testimony regarding Defendants' violations of federal and state law.

54.     Defendants paid Mr. Perez in cash in order to avoid reporting requirements, detection of their failure to pay overtime, and applicable taxes.

55.     Defendants have not paid Mr. Perez for the overtime worked, nor provided compensation adequate to state and federal minimum wage requirements. He worked no fewer than approximately 1,872 hours, no fewer than approximately 912 of which were overtime; Defendants paid Mr. Perez only approximately $12,000. Defendants owe Mr. Perez a substantial sum in damages to compensate for these and other injuries.

56.     Although Mr. Perez often worked overtime, Defendants did not pay additional compensation for these hours worked. On some occasions, Defendants did not pay Mr. Perez at all for one or more days he had worked. Further, Defendants often called Mr. Perez in to work on his day off, and implied that he might be fired if he did not come in on short notice.

57.     Mr. Perez performed a number of tasks while an employee at Goodfellas Restaurant, including mopping floors, hauling heavy boxes, helping to prepare food, and cleaning the kitchen. As part of these duties Mr. Perez often worked with both food products and other kitchen supplies and equipment that traveled in interstate commerce.

58.     On numerous occasions Defendants required Mr. Perez to move dangerously heavy boxes at significant risk to his own health and safety. Defendant Iannaccone often threatened Mr. Perez in these instances, yelling profanities and racial slurs at him in order to force him to lift boxes. On one such occasion, Defendant Iannaccone screamed at Mr. Perez "you fucking Mexican, come on I know you can do it!" or words to that effect.

59.     Although Mr. Perez repeatedly informed Defendant Iannaccone of a pre-existing back condition that made it dangerous for him to lift these boxes, Defendant Iannaccone insisted

that he did not care and that Mr. Perez had to lift the boxes or else he would be fired.

60.     Defendant Iannaccone also often forced Mr. Perez to lift a hot frying pan with a hot handle that contained food waste and place it in hot water in an industrial-sized sink. Mr. Perez and other employees requested that Defendant Iannaccone provide them safety gloves to handle or lift this pan on multiple occasions, but Defendant Iannaccone refused. Mr. Perez suffered burns on his hands as a result of having to move the pan without proper protection.

61.     Defendant Iannaccone also forced Mr. Perez to wash pans in a sink filled with dirty, opaque water without adequate protection, resulting in injuries and scarring on his hands and arms.

62.     Defendant Iannaccone would frequently use racist and homophobic language towards Mr. Perez and the other Workers. He routinely screamed at them, referring to them as "dogs," "fucking Mexicans," "animals," and "faggots," in both English and Spanish.

63.     Defendant Iannaccone's frequent use of racist and other discriminatory language produced a hostile and discriminatory workplace environment.

**Plaintiff Ulber Morales**

64.     Defendant Iannaccone hired Mr. U. Morales to work at Goodfellas Restaurant starting on or about March 15, 2014. Mr. U. Morales worked at the Restaurant until approximately June 27, 2014.

65.     Mr. U. Morales typically worked from approximately 11:00 A.M until 11:00 P.M on Sundays, Tuesdays, Wednesdays, and Thursdays, and from approximately 11:00 A.M. until 12:00 A.M. on Fridays and Saturdays.

66.     For the full six days worked, Defendants paid Mr. U. Morales a weekly wage of $500 in cash. Defendants did not offer him pay stubs, or any other form of documentation in

regard to his work.

67.     Defendants paid Mr. U. Morales in cash in order to avoid reporting requirements, detection of their failure to pay overtime, and applicable taxes.

68.     Mr. U. Morales has not been paid overtime, nor received adequate compensation to cover state and federal minimum wages. He worked no fewer than approximately 1,339 hours, no fewer than approximately 441 of which were overtime. Defendants paid him only approximately $7,360. He is owed substantial sum in damages to compensate for these and other injuries.

69.     Mr. U. Morales performed a number of tasks while an employee at Goodfellas, including mopping floors, hauling heavy boxes, helping to prepare food, and cleaning the kitchen. As part of these duties Mr. U. Morales often worked with both food products and other kitchen supplies and equipment that traveled in interstate commerce.

70.     Defendant Iannaccone often yelled insults, profanities, and slurs at Mr. U. Morales and others, creating a discriminatory and hostile work environment.

71.     In one instance, after informing Defendant Iannaccone that he did not know how to prepare a particular dish, Defendant Iannaccone began derisively referring to Mr. U. Morales as "Guatemala," which is a derogatory reference to a stereotype of Guatemalans as being unintelligent and speaking Spanish poorly.

72.     In another, one of Mr. U. Morales' coworkers was injured after falling down the stairs to the restaurant's basement. Defendant Iannaccone fired this coworker because the cutting board the worker had been carrying broke when he fell.

73.     As a result of the hostile environment and the demands and pressure created by Defendants, Mr. U. Morales suffered from headaches and anxiety.

**Plaintiff Isain Ceron**

74.     Defendant Iannaccone hired Mr. Ceron on or about January 6, 2015, and he worked at the restaurant until approximately March 7, 2015.

75.     Mr. Ceron typically worked from approximately 11:00 A.M. until 10:00 P.M. on Sundays, Mondays, Tuesdays, and Wednesdays, and from approximately 11:00 A.M. until 11:00 P.M. on Fridays and Saturdays.

76.     Mr. Ceron performed a number of tasks while an employee at Goodfellas: shoveling snow, mopping floors, hauling heavy boxes, preparing food, and cleaning the kitchen. As part of these duties, Mr. Morales often worked with both food products and other kitchen supplies and equipment that traveled in interstate commerce.

77.     Defendants paid Mr. Ceron a weekly wage of $500 in cash. Defendants did not offer him pay stubs or any other form of documentation regarding his work.

78.     Defendants paid Mr. Ceron in cash in order to avoid reporting requirements, detection of his failure to pay overtime, and applicable taxes.

79.     Mr. Ceron has not been paid overtime, nor received compensation adequate to state and federal minimum wage requirements. He worked no fewer than approximately 624 hours, no fewer than approximately 264 of which were overtime. Defendants paid Mr. Ceron only approximately $4,000. Defendants owe him substantial sum in damages to compensate for these and other injuries.

80.     Defendants harassed and discriminated against Mr. Ceron on the basis of his race and perceived national origin while he was working at the restaurant, in violation of Connecticut and federal antidiscrimination law.

81.     Defendant Iannaccone often referred to Mr. Ceron as "fucking Mexican,"

"pendejo," and other derogatory racial epithets.

**Plaintiff Carlos Gonzalez**

82.     Defendant Iannaccone hired Mr. Gonzalez on or about January 14, 2015, and he worked there until approximately March 4, 2015.

83.     Mr. Gonzalez typically worked six days a week, averaging over 72 hours a week. He typically worked from 11:00 A.M. until 11:00 P.M. or midnight. He sometimes worked additional hours, staying after midnight to help close the restaurant.

84.     Defendants paid Mr. Gonzalez a weekly wage of $500 in cash. Defendants did not offer him pay stubs or any other form of documentation regarding his work.

85.     Defendants paid Mr. Gonzalez in cash in order to avoid reporting requirements, detection of his failure to pay overtime, and applicable taxes.

86.     Mr. Gonzalez has not been paid overtime, nor received, compensation adequate to state and federal minimum wage requirements. He worked no fewer than approximately 432 hours, no fewer than approximately 208 of which were overtime. Defendants paid Mr. Gonzalez only approximately $3,500. Defendants owe him a substantial sum in damages to compensate for these and other injuries.

87.     Mr. Gonzalez performed a number of tasks while an employee at Goodfellas: mopping floors, hauling heavy boxes, helping to prepare food, and cleaning the kitchen. As part of these duties, Mr. Gonzalez often worked with both food products and other kitchen supplies and equipment that traveled in interstate commerce.

88.     Defendant Iannaccone's frequent use of racist, homophobic, and other discriminatory language produced a hostile and discriminatory workplace environment.

89.     On numerous occasions, Defendant Iannaccone used homophobic slurs to

describe Mr. Gonzalez, including "faggot," in both English and Spanish.

90.     Defendant Iannaccone revealed Mr. Gonzalez's sexual orientation to those who worked at Goodfellas Restaurant, despite the fact that Mr. Gonzalez did not want to reveal his orientation to his co-workers.

91.     Defendant Iannaccone terminated Mr. Gonzalez based on his sexual orientation.

**Plaintiff Jorge Melchor**

92.     Defendant Iannaccone hired Mr. Melchor on or about January 6, 2014, and Mr. Melchor worked at Goodfellas Restaurant until approximately June 29, 2014. Defendants subsequently rehired Mr. Melchor, who worked at the Restaurant for a second time from on or about December 1, 2014 until approximately June 2, 2015.

93.     Mr. Melchor typically worked from approximately 11:00 A.M. until 10:00 P.M., except for Fridays and Saturdays, when he worked from approximately 11:00 A.M. until 11:00 P.M.

94.     Defendants paid Mr. Melchor a weekly wage of $500 in cash. From approximately January 6, 2014 until approximately April 19, 2015, Defendants did not give him pay stubs, or any other form of documentation in regard to his work.

95.     Defendants paid Mr. Melchor in cash in order to avoid reporting requirements, detection of their failure to pay overtime, and applicable taxes.

96.     Starting on or about May 1, Defendants paid Mr. Melchor a weekly wage of $500 by check, for work performed starting the week of April 19, 2015.

97.

98.     Mr. Melchor has not been paid overtime, nor received compensation adequate to state and federal minimum wage requirements. He worked no fewer than approximately 3,602

hours, no fewer than approximately 1,500 of which were overtime. Defendants paid Mr. Melchor only approximately $26,500. Defendants owe him a substantial sum in damages to compensate for these and other injuries.

99.     Mr. Melchor performed a number of tasks while an employee at Goodfellas: mopping floors, hauling heavy boxes, helping to prepare food, and cleaning the kitchen. As part of these duties, Mr. Melchor often worked with both food products and other kitchen supplies and equipment that traveled in interstate commerce.

## FIRST CLAIM FOR RELIEF

## FAIR LABOR STANDARDS ACT, 29 U.S.C. §§ 201 et seq. ("FLSA")

100.     Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

101.     This claim is brought by all Plaintiffs against all Defendants.

102.     At all relevant times, Defendants Goodfellas Cafe LLC, AC702 LLC, Gennaro Iannaccone, Andrea Coppola, and Francesco Aurioso were joint and/or integrated employers within the meaning of 29 U.S.C. § 203(d) and 29 C.F.R. § 791.2.

103.     Defendants failed to pay Plaintiffs the minimum hourly wage due to them for all hours worked, in violation of 29 U.S.C. § 206(a)(1)(C).

104.     Defendants failed to pay Plaintiffs overtime pay for all hours that they worked in excess of forty hours per week for each week in violation of 29 U.S.C. § 207(a)(1).

105.     Defendants' violations of FLSA were willful. Despite having been the subject of investigation for previous wage and hour violations, Defendants' violations of FLSA were neglectful of prevailing law, employed fraudulent bookkeeping and pay arrangements, and demonstrated disregard for the requirements of FLSA.

106.    As a result of these violations, the Plaintiffs suffered damages.

107.    Defendants are jointly and severally liable to the Plaintiffs for these violations of their rights under federal law.

108.    The Plaintiffs are entitled to an award of damages for unpaid wages and unpaid overtime, plus liquidated damages in an equal amount and interest, as well as attorneys' fees, in an amount to be determined at trial. 29 U.S.C. § 216(b).

### SECOND CLAIM FOR RELIEF

### CONNECTICUT MINIMUM WAGE ACT

109.    Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

110.    Plaintiffs bring this claim under the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31-68 and 31-72, against all Defendants.

111.    At all relevant times, Defendants Goodfellas Cafe LLC, AC702 LLC, Gennaro Iannaccone, Andrea Coppola, and Francesco Aurioso were employers within the meaning of Conn. Gen. Stat. §§ 31-58(e) and 31-71a(1).

112.    At all relevant times, Defendants employed Plaintiffs within the meaning of Conn. Gen. Stat. § 31-58(h). At all relevant times, Plaintiffs were employees of Defendants within the meaning of §§ 31-58(f) and 31-71a(2).

113.    Defendants, knowingly and in bad faith:

      a.    failed to pay overtime wages due to Plaintiffs for hours worked in excess of forty per week, in violation of Conn. Gen. Stat. §§ 31-76b and 31-76c;

      b.    failed to pay Plaintiffs the regular hourly wage due to them for all

hours worked, in violation of Conn. Gen. Stat. §31-71b.

114.    As a result, Plaintiffs suffered damages.

115.    Defendants are jointly and severally liable to Plaintiffs for these violations of their rights under state law.

116.    Plaintiffs are entitled to an award of damages for unpaid wages and unpaid overtime, plus liquidated damages in an equal amount and interest, as well as attorneys' fees, in an amount to be determined at trial. Conn. Gen. Stat §§ 31-68, 31-72.

### THIRD CLAIM FOR RELIEF

### FORCED LABOR – 18 U.S.C. §§ 1595, 1589

117.    Plaintiffs Perez, M. Morales, U. Morales, and Gonzalez ("the Forced Labor Plaintiffs") repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

118.    The Forced Labor Plaintiffs bring this claim against Defendants Iannaccone, Coppola, and Aurioso.

119.    Defendant Iannaccone threatened to send the Forced Labor Plaintiffs "back to Mexico" on a near-daily basis if they did not perform the work he demanded of them.

120.    This claim is brought under 18 U.S.C. § 1595 of the Trafficking Victims Protection Reauthorization Act ("TVPRA").

121.    Defendants subjected the Forced Labor Plaintiffs to forced labor in violation of 18 U.S.C. § 1589.

122.    Defendants subjected the Forced Labor Plaintiffs to intense psychological and verbal abuse on an almost-daily basis, which was designed to coerce the Forced Labor Plaintiffs into believing that they would suffer serious harm if they were to leave the employ of Defendants

or not perform work in the manner demanded by the Defendants, in violation of 18 U.S.C. § 1589(a).

123.    Defendants threatened the Forced Labor Plaintiffs with deportation by immigration officials and U.S. law enforcement agents, in a manner that constituted a threatened abuse of the legal process and threat of serious harm to the Forced Labor Plaintiffs under 18 U.S.C. § 1589(a)(2-3).

124.    The Forced Labor Plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial and any other relief deemed appropriate.

## FOURTH CLAIM FOR RELIEF

## RACKETEERING INFLUENCED CORRUPT ORGANIZATIONS ACT ("RICO")

125.    The Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

126.    Plaintiffs bring this claim under 18 U.S.C. § 1964.

127.    Goodfellas Cafe LLC, AC702 LLC, Gennaro Iannaccone, Andrea Coppola, and Francesco Aurioso have a long-lasting and continuing relationship and represent an association-in-fact, and therefore an enterprise, for the purposes of 18 U.S.C. § 1961(4).

128.    Defendants, in their capacity as an enterprise, engaged in interstate commerce.

129.    Defendants organized and participated in a criminal worker exploitation scheme designed to systematically pay illegally low wages and exploit workers for personal profit.

130.    In furtherance of this criminal worker exploitation scheme, Defendants unlawfully conducted the affairs of an enterprise, both directly and indirectly, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

131.    Defendant Iannaccone repeatedly pulled Mr. Misael Morales aside to discuss an

ongoing wage theft lawsuit against Gourmet Heaven, a New Haven grocery and restaurant.

132.   In these conversations, Defendant Iannaccone stated on multiple occasions that Mr. M. Morales had no rights in the United States, that Defendants could fire him anytime if they wanted to, and that Mr. M. Morales should not betray them, or words to that effect.

133.   These statements were intended to misinform and intimidate Mr. M. Morales from providing information and testimony to state and federal officials regarding Defendants' violations of state and federal minimum wage and overtime law, as well as other violations of federal law alleged in this complaint.

134.   On approximately October 25, 2014, Defendants began paying Mr. M. Morales an extra $50 cash in his weekly wages, for a total of $550 per week. Defendant Iannaccone explained this extra money to Mr. M. Morales while discussing the wage theft investigation and litigation at Gourmet Heaven, telling Mr. M. Morales that he had too much going on his life to go to court and that he and Defendant Iannaccone were friends, or words to that effect.

135.   This payment constituted an attempt by Defendants to corruptly persuade Mr. M. Morales not to provide information and testimony to federal officials, or to bring an administrative or judicial complaint regarding Defendants' violations of federal law.

136.   Defendants on approximately November 29, 2014 also began paying Mr. Perez an extra $50 cash in his weekly wages, for a total of $550 per week. Mr. Perez asked Defendant Iannaccone about this extra money, and understood from this exchange that, in the context of discussions at the Restaurant about the Gourmet Heaven wage dispute and litigation, Defendants gave him this additional $50 to discourage him from providing information and testimony regarding Defendants' violations of federal law.

137.   Defendants were aware that official proceedings could be instituted against them

for their violations of federal law, given their knowledge of the Gourmet Heaven wage abuse lawsuit and Defendants' own prior history of violations of federal and state wage and hour law.

138.   Defendant Iannaccone often yelled at the Workers that he would send them back to Mexico, or words to that effect, when he was dissatisfied with their work.

139.   Defendant Iannaccone's threats of deportation caused great fear in the Workers, fear of arrest as well as of economic loss.

140.   Defendant Iannaccone wrongfully used this fear to induce Workers to consent to giving up to Defendants the wages to which they were entitled under state and federal minimum wage and overtime laws.

141.   The Defendants knowingly and willfully committed the following predicate acts under RICO, 18 U.S.C. § 1961(1):

      a.  forced labor, in violation of 18 U.S.C. § 1589;

      b.  tampering with a witness, in violation of 18 U.S.C. § 1512, by using intimidation and threats against Workers, and attempting to corruptly persuade them by providing an additional $50 compensation per week with the intent of preventing the testimony of workers in an official proceeding they knew was likely to be instituted, as well as to prevent the Workers communication of information related to Federal offenses, including violations of FLSA and TVPRA;

      c.  robbery or extortion of Workers' property, in violation of 18 U.S.C. § 1951, by wrongfully using threats of deportation and economic loss to induce Workers to give up to Defendants the

wages to which they were entitled under state and federal minimum wage and overtime laws; and

d.  mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, by submitting fraudulent Form 941 employer quarterly federal tax forms on or about April 30, 2014, July 31, 2014, October 31, 2014, January 31, 2015, and April 30, 2015 to the Internal Revenue Service; and fraudulent UC-5A Connecticut employee quarterly earnings reports and UC-2 employer contribution returns on or about April 30, 2014, July 31, 2014, October 31, 2014, January 31, 2015, and April 30, 2015 to the Connecticut Department of Labor, which inaccurately reported both the number of employees working at the Restaurant and the compensation they received.

142.   The predicate acts of racketeering activity described above constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

143.   The predicate acts were related to one another: they were committed against the same individuals (the Plaintiffs) and for the same purposes (furtherance of the criminal worker exploitation scheme and personal profit).

144.   The predicate acts were related to the enterprise. Defendants could not successfully conduct the criminal worker exploitation scheme without the associations that formed the enterprise.

145.   The racketeering activity took place over the course of multiple years.

146.   Such acts of racketeering activity have been part of the Defendants' regular way of doing business through the enterprise, which implies a threat of continued criminal activity.

147.     Plaintiff workers bring suit under 18 U.S.C. § 1964 to recover treble damages and attorneys' fees for injuries sustained as a result of the Defendants' violation of 18 U.S.C. § 1962(c).

## FIFTH CLAIM FOR RELIEF

## RACE AND NATIONAL ORIGIN DISCRIMINATION – 42 U.S.C. § 1981

148.     Plaintiffs Perez, M. Morales, Ceron, and Gonzalez (the "Section 1981 Plaintiffs") repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

149.     The Section 1981 Plaintiffs were subjected to regular verbal abuse including the use of derogatory epithets and other humiliating language by Defendant Iannaccone based on their race and national origin.

150.     Defendant Iannaccone's conduct was not welcomed by the Section 1981 Plaintiffs.

151.     Defendant Iannaccone's conduct was motivated by the fact that the Section 1981 Plaintiffs are Latino, as well as by the Section 1981 Plaintiffs' perceived national origins.

152.     This conduct was so severe or pervasive that a reasonable person in the Section 1981 Plaintiffs' position would find their work environment to be hostile or abusive because of the Section 1981 Plaintiffs' race and perceived national origin.

153.     The Section 1981 Plaintiffs' work environment was hostile and abusive as a result of Defendant Iannaccone's conduct.

154.     The Section 1981 Plaintiffs are entitled to monetary relief for damages and interest in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

155.    Plaintiffs Perez, M. Morales, U. Morales, Ceron and Gonzalez (the "IIED Plaintiffs") repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

156.    The IIED Plaintiffs bring this claim against Defendant Iannaccone.

157.    Defendant Iannaccone intentionally engaged in extreme and outrageous conduct which Defendant knew or should have known would inflict severe emotional distress on the IIED Plaintiffs.

158.    Defendant Iannaccone's extreme and outrageous conduct occurred in part during the termination of employment of each IIED Plaintiff.

159.    Defendant Iannaccone's conduct which intentionally inflicted distress included systemic abuse, criticism and harassment of the IIED Plaintiffs in the workplace.

160.    The IIED Plaintiffs suffered severe emotional distress.

161.    Defendant Iannaccone's intentional acts directly caused this distress.

162.    The IIED Plaintiffs are entitled to monetary relief for compensatory and punitive damages and interest in an amount to be determined at trial.

**SEVENTH CLAIM FOR RELIEF**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

163.    Plaintiffs Perez, M. Morales, U. Morales, Ceron and Gonzalez (the "NIED Plaintiffs") repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

164.    The NIED Plaintiffs bring this claim against Defendant Iannaccone.

165.    Defendant Iannaccone engaged in conduct that involved an unreasonable risk of

causing distress to NIED Plaintiffs.

166.    Defendant Iannaccone realized that the distress, if caused, might result in illness or bodily harm.

167.    Defendant Iannaccone's conduct that involved an unreasonable risk of causing distress occurred in part during the termination of employment of each NIED Plaintiff.

168.    The NIED Plaintiffs are entitled to monetary relief for compensatory and punitive damages and interest in an amount to be determined at trial.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a.    Award Plaintiffs monetary damages for unpaid minimum wage and overtime, plus liquidated damages in an equal amount and interest, as provided by FLSA, 29 U.S.C. § 216(b), in an amount to be determined at trial;

b.    Award Plaintiffs monetary damages for unpaid minimum wage and overtime, plus liquidated damages in an equal amount and interest, as provided by Conn. Gen. Stat. § 31-68 and § 31-72, in an amount to be determined at trial;

c.    Award Plaintiffs monetary damages for subjecting Plaintiffs to a hostile work environment on account of their race and perceived national origin, as provided by 42 U.S.C. § 1981, in an amount to be determined at trial;

d.    Award the Forced Labor Plaintiffs compensatory and punitive damages in accordance with 18 U.S.C. § 1595(a) for Defendants' subjecting them to forced labor in violation of 18 U.S.C. § 1589, in an amount to be determined at trial;

e.     Award Plaintiffs treble damages for injuries sustained as a result of the Defendants' violation of 18 U.S.C. § 1962(c) in accordance with 18 U.S.C. § 1964(c), in an amount to be determined at trial;

f.     Award the IIED and NIED Plaintiffs compensatory damages for Defendants' violation of Connecticut common law (intentional and negligent infliction of emotional distress), in an amount to be determined at trial;

g.     Award attorneys' fees and costs to Plaintiffs pursuant to 29 U.S.C. § 216(b), Conn. Gen. Stat. §§ 31-68(a), 31-72, 42 U.S.C. § 1988, and 18 U.S.C. §§ 1964(c), 1595(a).

h.     Grant such additional and further relief as the Court deems just and proper.


Dated: July 30, 2015

                          _/s/ Michael J. Wishnie_____
                          Mariana De Vita, Law Student Intern
                          Jonathan Hurley, Law Student Intern
                          Adan Martinez, Law Student Intern
                          Michael J. Wishnie, Supervising Attorney, ct27221
                          Jerome N. Frank Legal Services Organization
                          Yale Law School
                          P.O. Box 209090
                          New Haven, CT 06520
                          (203) 432-4800

                          *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that, on July 30, 2015 a copy of the foregoing documents was filed electronically. Notice of this filing will be sent by email to all counsel for all parties by operation of the court's electronic filing system. Parties may access this filing through the court's CM/ECF system.

                                            /s/ Michael J. Wishnie
                                            Michael J. Wishnie
                                            Jerome N. Frank Legal Services
                                            Organization
                                            P.O. Box 209090
                                            New Haven, CT 06520
                                            P: (203) 432-4800
                                            F: (203) 432-1426