# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

_____
)
ABIMAEL PEREZ, ISAIN CERON,     )
MISAEL MORALES, ULBER MORALES, )
CARLOS GONZALEZ, and JORGE    )
MELCHOR,                     )
)
          _Plaintiffs,_      )
)   No. 3:15-cv-00642-CSH
     v.                    )
)
GOODFELLAS CAFE LLC, AC702 LLC, )
GENNARO IANNACCONE, ANDREA   )   October 12, 2015
COPPOLA, and FRANCESCO AURIOSO, )
)
          _Defendants._    )
_____)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT GENNARO IANNACCONE'S MOTION TO DISMISS

Respectfully,

       /s/ Michael J. Wishnie
Michael J. Wishnie, Supervising Attorney (ct27221)
A. Nicole Hallett, Supervising Attorney (ct28495)
Will Bloom, Law Student Intern
Jordan Laris Cohen, Law Student Intern
Zachary Manfredi, Law Student Intern
Adan Martinez, Law Student Intern
Joshua Nuni, Law Student Intern

JEROME N. FRANK
LEGAL SERVICES ORGANIZATION
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090
Phone: (203) 432-4800

_Counsel for the Plaintiffs_

**Table of Contents**

I.      Introduction…………………………………………………………3

II.     Statement of Facts and Procedural History…………………………4

III.    Discussion……………………………………………………………6

        A.      Standard on Motion to Dismiss ................................................................ 6

        B.      The Workers Have Sufficiently Alleged That Defendant Iannaccone
                Was Their Employer Under FLSA and CMWA. .................................. 6

                1.      Defendant Iannaccone Was an Employer Under FLSA.................. 6

                2.      Defendant Iannaccone Was an Employer Under CMWA.............. 12

        C.      Workers Perez, M. Morales, U. Morales, and Gonzalez Have
                Sufficiently Alleged that Defendant Iannaccone Committed Forced
                Labor ................................................................................................ 15

        D.      The Workers Sufficiently Allege That Defendant Iannaccone Violated
                the Racketeering Influenced Corrupt Organizations Act. ................... 19

        E.      This Court Has Jurisdiction Over the Workers' Discrimination
                Claims Because § 1981 Has No Administrative Exhaustion
                Requirement ........................................................................................ 24

        F.      The Complaint Alleges Extreme and Outrageous Conduct by
                Defendant Iannaccone that States a Claim for Intentional Infliction of
                Emotional Distress. ............................................................................ 24

        G.      The Complaint States a Claim for Relief Based on Defendant
                Iannaccone's Negligent Infliction of Emotional Distress. ................... 27

IV.     Conclusion……………………………………………………………30

## I.      Introduction

Plaintiffs Abimael Perez, Isain Ceron, Misael Morales, Ulber Morales, Carlos Gonzalez and Jorge Melchor (collectively, the "Workers") allege that the Defendants engaged in a criminal conspiracy—furthered through fraud and forced labor—to exploit the their labor and deny them access to justice. The Workers have pled claims for all seven causes of action against Defendant Gennaro Iannaccone that entitle them to relief for violations of their legal rights, deprivations of earnings, and infliction of serious psychological and emotional harm.

Straining to avoid responsibility for his actions, Defendant Iannaccone submits a Motion to Dismiss that fundamentally mischaracterizes his role at Goodfellas Restaurant, confuses multiple causes of actions, and repeatedly fails to advise the Court of binding legal authority. Defendant Iannaccone misrepresents himself as a mere "employee" of Goodfellas Restaurant when the alleged facts and legal standards unequivocally establish that he is an employer. He attempts to shift employer liability wholly onto AC702 LLC, a company whose sole member and owner is his romantic partner, Andrea Coppola. AC702 LLC was created seven months after the second of two U.S. Department of Labor investigations found that Goodfellas Restaurant – then operated by a different limited liability corporation, Goodfellas Cafe LLC, whose sole member is Defendant Iannaccone – had committed serious violations of minimum wage and overtime law. Despite this corporate restructuring, Defendant Iannaccone has remained an employer and de facto owner at Goodfellas throughout the restaurant's history. Defendant Iannaccone's present effort to mislead this Court is another example in a long series of actions attempting to avoid responsibility for his conduct.

The Workers have adequately alleged that Defendant Iannaccone engaged in a criminal conspiracy that violated state and federal labor and employment law, committed forced labor, inflicted intentional and negligent emotional distress, and created a racist and xenophobic working environment. Defendant's Motion to Dismiss misconstrues both the law and facts as alleged in the Complaint and should be denied in its entirety

## II.   Statement of Facts and Procedural History

As alleged in the Amended Complaint, Goodfellas Restaurant ("the Restaurant" or "Goodfellas") in New Haven, Connecticut and its owners and managers are repeat violators of labor and employment law. In recent years, federal officials have twice investigated the Restaurant and Defendants, and each time found numerous violations of labor and employment law. *See* ECF No. 26 [hereinafter "Amended Complaint"], ¶¶ 28-34. Despite their promises to abide by the law, Defendants have continued to operate a business built on exploitation and abuse. Plaintiffs Abimael Perez, Isain Ceron, Misael Morales, Ulber Morales, Carlos Gonzalez, and Jorge Melchor, former employees of Goodfellas, have filed this lawsuit to demand compensation for stolen wages and physical and emotional injuries, and to bring the Defendants' criminal activities to an end.

The Amended Complaint alleges that Defendants engaged in a pattern of abuse and illegal activities against their workers. The Defendants refused to pay the Workers in accordance with state and federal minimum wage and overtime laws. *Id.* at 1. Instead, they paid each Plaintiff a standard rate of $500 per week for an approximately seventy-two hour workweek. *Id.* ¶¶ 25, 38, 51, 66, 77, 84, 94.  The Defendants berated and

4

belittled the Workers with racist, xenophobic, and homophobic slurs, referring to them as "dogs," "fucking Mexicans," "animals," and "faggots." *Id.* ¶¶ 62, 81. The Amended Complaint also describes how Defendants subjected Plaintiffs to physically punishing conditions, demanding that the Workers keep the kitchen door open in the dead of winter, denying them meal breaks, requiring them to lift dangerously heavy boxes without proper equipment, and forcing them work with sharp items and hot surfaces without protection in an exceptionally harried and careless atmosphere. *Id.* ¶¶ 1-2.

The Amended Complaint further alleges that Defendants employed fraud and deception to conceal their crimes from the authorities, in violation of the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, *see* Amended Complaint at ¶¶ 125-147; *see also* ECF No. 22 (RICO Case Statement), and have threatened and intimidated their workers in order to prevent them from seeking legal redress. Amended Complaint ¶¶ 134-136 (describing how Defendant Iannaccone increased the weekly pay of Mr. M. Morales and Perez by $50 as a means of corruptly dissuading them from testifying to federal officials).

Mr. Perez, Ceron, M. Morales, U. Morales, and Gonzalez brought these claims in a federal complaint on May 1, 2015. ECF No. 1. On May 28, 2015 the Court granted Defendant Iannaccone an extension until July 9, 2015 to file an answer or otherwise respond to the complaint. ECF No. 11.  Defendant Iannaccone moved to dismiss. ECF No. 24.  On July 30, 2015 Plaintiffs filed an Amended Complaint that added Mr. Melchor as a Plaintiff and AC702 LLC as a Defendant. Amended Complaint, ECF No. 26.  The Court granted an extension to Defendant Iannaccone to file an answer or otherwise respond, ECF No. 30, and on September 21, 2015, Defendant Iannaccone filed the instant

motion. ECF No. 40, *Perez v. Cafe Goodfellas, LLC*, No. 3:15-cv-00642-CSH (2015) [hereinafter "Iannaccone Motion to Dismiss"].

## III.   Discussion

### A.   Standard on Motion to Dismiss

For a complaint to survive a motion to dismiss under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true," to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Court must accept as true all the factual allegations in the Complaint and construe all reasonable inferences therefrom in the light most favorable to plaintiffs. *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 85 n.1 (2d Cir. 2011). The Second Circuit has made clear that the plausibility standard "does not impose a probability requirement at the pleading stage," but merely asks whether the complaint presents sufficient facts to "permit a reasonable inference" that the Plaintiffs have stated a claim. *Anderson News, LLC v. American Media, Inc.*, 680 F.3d 162, 168 (2d Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

### B.   The Workers Have Sufficiently Alleged That Defendant Iannaccone Was Their Employer Under FLSA and the CMWA.

#### 1.   Defendant Iannaccone was an Employer Under FLSA

Plaintiffs have sufficiently alleged that Defendant Iannaccone was an employer under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), at all relevant times. FLSA defines an "employee" as "any individual employed by an employer." *Id.* §

203(e)(1). A person or entity "employs" an individual under FLSA if that person or entity "suffer[s] or permit[s]" the employee to work. *Id.* § 203(g).

It is well established that Congress intended FLSA's definitions of "employee," "employer," and "employs" to be exceedingly broad "in accordance with the remedial purpose of the FLSA." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir. 2003); *see also United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945); *Falk v. Brennan*, 414 U.S. 190, 195 (1973); *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984) ("[The FLSA] statute is a remedial one, written in the broadest possible terms so that the minimum wage provisions would have the widest possible impact in the national economy."). A single individual can have more than one employer for the same employment relationship under FLSA. 29 C.F.R. § 791.2 (establishing joint employer liability under FLSA).

A person "suffers or permits" an individual to work, and is therefore that person's employer, if, "as a matter of 'economic reality,' the entity functions as the individual's employer." *Zheng*, 355 F.3d at 66; *see also Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) ("economic reality, rather than technical concepts, is. . .the test of employment"). In *Carter v. Dutchess Community College*, the Second Circuit held that economic reality "is understood to include inquiries into whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* Summing up, the court explained that "[t]he power to control a worker clearly is a crucial factor in determining whether an employment relationship exists." 735 F.2d at 12 (citations omitted). A putative employer

need not meet all four parts of the test to be found to be an employer, as the test addresses the "totality of circumstances." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

In *Zheng*, the Second Circuit refined the "economic reality" test, clarifying that the test "demands that a district court look beyond an entity's formal right to control the physical performance of another's work before declaring that the entity is not an employer under the FLSA." 355 F.3d at 69. Though the *Zheng* panel made clear that the *Carter* factors were often sufficient to establish employer status, it offered an additional six functional control factors for district courts to consider. *Id.* at 72.[1] However, the Second Circuit made clear that "the court is also free to consider any other factors it deems relevant to its assessment of the economic realities." *Id.* at 71-72.

In this case, the Workers have sufficiently alleged that Defendant Iannaccone is an employer under the economic reality test established by *Carter* and *Zheng*. First, Defendant Iannaccone had the power to hire and fire all the Workers, as evidenced by the fact that he did hire all of them, and fired several of them as well. Amended Complaint ¶¶ 19, 35, 49, 52, 64, 74, 82, 91, 92.  Second, Defendant Iannaccone supervised and controlled the Workers' schedules and conditions of employment, setting those schedules at time of hiring, and closely supervising and instructing them throughout their time at the Restaurant. *Id.*  ¶¶ 20, 35, 39, 44-49, 58-64, 70-72, 74, 81-82, 87-90, 92.  Defendant Iannaccone determined the rate and method of pay for each worker, established the $500 per week payment for each worker, and often made the cash payments personally. *Id.* ¶¶

---

[1] The *Zheng* panel also "found relevant" in the circumstances of that case: "(1) whether [the putative employer]'s premises and equipment were used for the plaintiffs' work; (2) whether the [undisputed employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [putative employer]'s process of production; (4) whether responsibility under the contracts could pass from one [undisputed

38, 51, 52, 66, 77, 84, 94, 96. The Amended Complaint did not contain an allegation that Defendant Iannaccone maintained employment records – because Defendants "failed to keep adequate records as required by law." *Id.* ¶ 21.[2]

Adequately alleging three of the four *Carter* factors is sufficient for a finding of employer status, especially where the absence of the fourth factor is due to an independent FLSA recordkeeping violation. *Herman*, 172 F.3d at 139-140 (finding employer status even in the absence of evidence that employer was involved in recordkeeping). Taking the allegations as true on this Rule 12(b)(6) motion, and especially in light of Defendant Iannaccone's overall power to control the Workers, as reflected in his constant, aggressive direction of the Workers in all aspects of their work, *see* Amended Complaint at ¶¶ 45-48, 58-63, 70-72, 80-81, 88-91, there can be no real dispute that Iannaccone was an "employer" under FLSA.

Additionally, while *Zheng* primarily spoke to the broad "totality of the circumstances" approach for determinations of employer status, 355 F.3d at 76, several of the non-exhaustive factors applied to the specifics of *Zheng* further support Defendant Iannaccone's employer status. He is an owner of the Restaurant, and therefore his premises are used for the Workers' work, Amended Complaint at ¶¶ 7, 14; the Workers' work was a discrete job integral to Defendant Iannaccone's business of running a kitchen, *id.* ¶¶ 44, 57, 69, 76, 87, 99; Defendant Iannaccone directly supervised all of the Workers' work, *id.* ¶¶ 45-48, 58-63, 70-72, 80-81, 88-91; and the Workers' work for

---

[2] Defendant Iannaccone cannot argue that his statutory recordkeeping violations exempt him from employer status.  *See Fermin v. Las Delicias Peruanas Restaurant, Inc.*, No. 14–CV–0559 (RRM)(VMS), 2015 WL 1285960 (E.D.N.Y. Mar. 19, 2015), at * 14 ("that Individual Defendants did not keep employment records does not undermine this finding [of employer status] because no employment records were kept; thus, the economic reality is that all employer tasks that were handled by the Individual Defendants"); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (holding that an employee cannot be penalized for an employer's failure to keep adequate records, and adjusting evidentiary burdens to account for employer recordkeeping violations).

Goodfellas happened predominantly for, and under, Defendant Iannaccone. *Id.*; *see also* *Zheng*, 355 F.3d at 71 (elaborating additional factors that may be relevant to FLSA employer status determination). As *Zheng* made clear, however, meeting the *Carter* test is sufficient to establish employer liability. *Zheng*, 355 F.3d at 71.[3]

The fact-intensive nature of the economic reality test under FLSA means that it is rarely appropriate to decide such claims on a motion to dismiss, or even a motion for summary judgment. *Barfield v. New York City Health and Hospitals Corp.* 537 F.3d 132, 143-144 (2d Cir. 2008) ("Because of the fact-intensive character of a determination of joint employment, we rarely have occasion to review determinations made as a matter of law on an award of summary judgment."); *Wu v. Chang's Garden of Storrs, LLC*, No. 3:08-CV-746 (WWE), 2010 WL 918079 at *3 (D.Conn. Mar. 11, 2010) (" [T]he Second Circuit has commented that it is rare that an employer determination can be made on summary judgment.").

None of Defendant Iannaccone's arguments against employer status look to relevant standards under FLSA. First, Defendant Iannaccone confuses the test for determining his employer status under FLSA with the test for determining whether the Restaurant is an "enterprise" that is covered under FLSA. Iannaccone Motion to Dismiss at 13. Defendant Iannaccone incorrectly cites *Garcia v. Serpe*, No. 3:08CV1662 VLB, 2012 WL 380253 (D. Conn. Feb. 6, 2012), to support his argument, but the question at issue in that case was whether three related businesses should be considered a single enterprise under FLSA, not whether those businesses were joint employers. *Garcia*, 2012

---

[3] Defendant Iannaccone argues that *Zheng* cautioned against a "misuse of FLSA." Iannaccone Motion to Dismiss, at 13. In fact, *Zheng* corrected an overly-narrow interpretation of joint employer liability under FLSA by acknowledging the "nonexclusive and overlapping set of factors [which] gives content to the broad 'suffer or permit' language in the statute." 355 F.3d at 75-76.

WL 380253, at *4 (D. Conn. Feb. 6, 2012). The jurisdictional requirements for FLSA coverage have no bearing on whether Defendant Iannaccone is an employer under FLSA.

Next, Defendant Iannaccone incorrectly argues that he cannot be an employer of the Workers because he is not an owner of the Restaurant. Iannaccone Motion to Dismiss, at 15. The Workers have sufficiently alleged Defendant Iannaccone's ownership of the Restaurant, including that Defendant Iannaccone has repeatedly represented himself as the owner in promotional materials.[4] Moreover, there is no requirement than a FLSA employer be an owner of a business, and Defendant Iannaccone provides no authority whatsoever to support this contention. His argument is simply wrong as a matter of law.

Third, Iannaccone cites three outdated and inapposite cases from the 1940s to try to evade the inevitable, *Id.* at 16-18: the Workers have adequately alleged that he is an employer under FLSA and the relevant Second Circuit precedent. In all three cases, there was a finding of joint employer liability. *See Dolan v. Day & Zimmerman*, 65 F.Supp. 923, 929 (D. Mass. 1946) (holding that a corporation that "fixed the salaries and wage levels of its employees, and retained the right to control and direct the work of [the]

---

[4] The Workers allege Defendant Iannaccone's ownership of the Restaurant, along with his co-owner and romantic partner Andrea Coppola. Amended Complaint ¶¶ 14-18.  Included in the Amended Complaint are screenshots from the website of Goodfellas Restaurant in which Defendant Iannaccone is identified as "Owner, Chef" and states, in his biography, that he "operate[s] the Restaurant "with his long time love, Andrea Coppola." *Id.* ¶ 15 (also available at www.goodfellasrestaurant.com/gerry (last visited October 3, 2015)).   In addition to the allegations in the Amended Complaint, press accounts repeatedly refer to Defendant Iannaccone as the "owner." *See, e.g.,* Joe Amarante, *New Haven's Café Goodfellas to Move into New State Street Space*, New Haven Register, Feb. 17, 2012 (describing the Restaurant as "his [Iannaccone's] Café Goodfellas" and quoting Iannaccone referring to it "my restaurant."). In a video attached to the story, Mr. Iannaccone is identified as "Owner Gennaro Iannaccone." *Id.* A 2014 article identifies the "proprietors of Goodfellas" as "chef Gennaro 'Gerry' Iannaccone and Andrea Coppola." Douglas P. Clement, *Goodfellas Gives Connecticut Food Bank $11,900 From Caymus Wine Dinner*, Connecticut Magazine, Nov. 5, 2014. A May 2015 TV segment identifies him as "Chef and owner Gennaro 'Gerry' Iannaccone . . . from Goodfellas." *In the Bender Kitchen: Italian in CT with Goodfellas!*, WTNH, May 5, 2015, http://wtnh.com/2015/05/05/in-the-bender-kitchen-italian-week-with-goodfellas/.  A review of the Restaurant, also from May 2015, refers to "chef-owner Gennaro 'Gerry' Iannaccone," whom the reviewer describes as "his own master in great surroundings," referencing the Restaurant's new location. Spencer Caldwell, *Goodfellas Restaurant, a New Haven Favorite*, The Hartford Courant, May 22, 2015.

employees" was a joint employer); *Greenberg v. Arsenal Bldg. Corp.*, 144 F.2d 292, 294 (2d Cir. 1944) (finding joint employer liability for a corporation that "was the renting agent for the building, hired the employees, paid them their wages, for which it was reimbursed by the owner, and directed and supervised them in the performance of their duties"); *Wabash Radio Corp. v. Walling*, 162 F.2d 391 (6th Cir. 1947) (finding joint employer liability).

Defendant Iannaccone attempts to distinguish these cases by arguing that because he "does not maintain the control" over the Restaurant, he cannot be an employer. Iannaccone Motion to Dismiss at 17-18. However, the Amended Complaint has alleged that he exercised an enormous level of control over the Workers. He hired and fired workers, set rate and method of pay, directly oversaw and issued instructions to workers, and was an owner of the Restaurant. Amended Complaint, ¶¶ 14-16, 18-21, 35, 37-49, 51-53, 57-64, 69-74, 80-82, 88-92, 99. Defendant Iannaccone also contends that he does not own the Restaurant, unlike the defendants in *Wabash Radio Corp.*, and therefore he cannot a joint employer. Again, Defendant Iannaccone's ownership of the Restaurant is not a factor of the Second Circuit's "economic reality" test for determining employer status. In fact, none of these cases discuss the "economic reality" test developed by *Carter* and *Zheng* because they were decided decades before the test was established.

Defendant Iannaccone's arguments as to why he is not liable under FLSA do not rely on relevant authority, and he fails to show that Plaintiffs have not sufficiently pled his employer status under FLSA. Accordingly, his motion to dismiss the FLSA claim against him should be denied.

### 2.    Defendant Iannaccone was an Employer Under CMWA.

The Workers have sufficiently alleged that Defendant Iannaccone was the Workers' employer for the purposes of the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31-58, et seq. ("CMWA"). Under CMWA, an employer "includes any individual . . . employing any person" and an employee "includes any person suffered or permitted to work by an employer." *Id.* § 31-71a. In light of CMWA's remedial purpose, and consistent with the statute's legislative intent, Connecticut courts have broadly construed the definition of employer. *See, e.g.*, *Butler v. Hartford Technical Institute, Inc.*, 243 Conn. 454, 463 (Conn. 1997) ("Our interpretation of the term employer as used in § 31-72, in contrast to the defendant's narrow construction, effectuates the statutory policies of compensating employees and deterring employers from failing to pay wages."). The Supreme Court of Connecticut has ruled that the term "employer" means "an individual who possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages" and that individuals within a corporate employer can also be employers. *Id.* at 462-63.

The Workers have sufficiently pled that Defendant Iannaccone is an employer under CMWA. In applying the *Butler* standard, courts have looked at whether the putative employer controlled the work of the employee including whether a) the putative employer decided which hours the employee worked, including overtime, b) the employee performed work which the putative employer requested, and c) the putative employer hired the employee. *Datto Inc. v. Braband*, 856 F.Supp.2d 354, 377 (D. Conn. 2012); *Butler*, 243 Conn. at 227; *Evans v. Tiger Claw, Inc.*, 141 Conn.App. 110, 123 (Conn. App. 2013). This is not an exclusive or exhaustive list, but one drawn from the case law that speaks to the "authority and control" test from *Butler*.

Defendant Iannaccone hired each of the Workers, set their schedules, terminated three of the Workers, set pay and paid all the Workers, and was responsible for the constructive discharge of two of the Workers. Amended Complaint at ¶¶ 16, 18, 19, 35, 49, 52, 64, 74, 82, 91, 92. He was the individual who ordered them to work the overtime hours for which they now seek compensation in accordance with the law. *Id.* ¶¶ 16, 25, 48, 56, 58, 59, 72, 77, 87, 99. Defendant Iannaccone was the primary individual assigning tasks to the Workers, and even when those tasks were dangerous or harmful, the Workers performed them. *Id.* ¶¶ 47, 48, 57, 58, 59, 60, 61, 69, 71, 72, 99. All these factors demonstrate that the Workers have sufficiently pled that Defendant Iannaccone is an employer for purpose of CMWA.

In support of his claim that he is not an employer under the CMWA, Defendant Iannaccone cites two cases. The first, *Butler v. McIntosh*, 1997 WL 112010 (Conn. Super. Ct. 1997), is an unpublished Superior Court opinion decided prior to the Connecticut Supreme Court's articulation of the standard for employer status in *Butler v. Hartford Technical Institute*, which has been recognized as the controlling interpretation of the statutory definition of "employer." *See, e.g., Datto Inc. v. Braband*, 856 F.Supp.2d at 377 ("Although previously courts in Connecticut diverged on the question of whether an individual could be considered an employer under Connecticut's wage protection statutes, in *Butler v. Hartford Technical Institute, Inc.*, the Connecticut Supreme Court resolved the question.") (citations omitted). Moreover, *Butler v. McIntosh* merely states that employer status requires more than "supervising a worker" or "signing a worker's payroll check." *McIntosh*, 1997 WL 112010, at *3. Indeed, the court recognized that

14

having "authority to hire or fire," which the Workers have alleged here, might be sufficient. *Id.*

Second, Defendant Iannaccone quotes extensively from *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132 (2d Cir. 1999), a case that – contrary to the Defendant's contention – concerns the economic reality test under FLSA, not under the CMWA. Defendant Iannaccone fails to advise this Court, however, that in *Butler v. Hartford Technical Institute, Inc.*, the Connecticut Supreme Court "declined to adopt the 'economic reality' test that the Second Circuit uses to define an employer under the FLSA." *Morales v. Cancun Charlie's Restaurant*, No. 3:07-cv-1836 (CFD), 2010 WL 7865081 at *6 (D.Conn. 2010). Any discussion of the FLSA economic reality test in *Herman* is inapplicable to employer status under the CMWA. Even if the Second Circuit's economic reality test were applicable to CMWA's definition of employer, as explained above, the allegations of the Amended Complaint meet that test.

Defendant Iannaccone's challenge to his liability under CMWA relies on obsolete case law and misrepresentations of judicial opinions that have nothing to do with the CMWA. Since he presents no valid arguments in support of his challenge, his motion to dismiss the CMWA claim against him should be denied.

### C.     Workers Perez, M. Morales, U. Morales, and Gonzalez have Sufficiently Alleged that Defendant Iannaccone Committed Forced Labor

Workers Abimael Perez, Misael Morales, Ulber Morales, and Carlos Gonzalez (collectively, the "Forced Labor Plaintiffs") have adequately pled a claim under the Trafficking and Victims Protection Reauthorization Act (TVPRA), which creates a private right of action for victims of forced labor 18 U.S.C. § 1595. Civil liability for

forced labor under TVPRA requires a finding by a preponderance of the evidence that the defendant "knowingly provide[d] or obtain[ed] the labor or service of a person" by "threats of serious harm" or "the abuse or threatened abuse of law or legal process," or by a pattern or scheme to do the same. 18 U.S.C. § 1589 (a) (2)-(4). Additionally, the TVPRA defines "harm" broadly as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Id.* § 1589(c)(2).

The Forced Labor Plaintiffs allege that Defendant Iannaccone obtained their labor through threats of abuse or legal process and threats of serious harm. Amended Complaint ¶¶ 122-123. Under TVPRA, *either* threats of serious harm *or* threatened abuse of law or legal process are sufficient to establish a claim of forced labor. 18 U.S.C.§ 15899(a).

Significantly, Defendant Iannaccone confuses the claim of "forced labor" with that of "trafficking" and "involuntary servitude," which are governed by entirely different sections of TVPRA. *See* 18 U.S.C. § 1584 (involuntary servitude); 18 U.S.C. § 1590 (trafficking). The limited case law cited by Defendant Iannaccone also incorrectly conflates the standard for involuntary servitude with that of forced labor. Iannaccone Motion to Dismiss at 22-23. In large part, Congress specifically included claims of "forced labor" in TVPRA in order to expand the reach of the statute *beyond* previous case law regarding "involuntary servitude." In the legislative history, Congress stipulated that the statute was meant to cover acts that "threaten dire consequences by means other than

overt violence," and to combat "forms of worker exploitation that do not rise to the level of involuntary servitude . . . ." H.R.Rep. No. 106–939, at 101 (2000) (Conf. Rep.).

Numerous courts have thus ruled that verbal threats of deportation and harassment are alone sufficient to establish a claim of forced labor under § 1589(a). For instance, in *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107 (D.D.C. 2012), the court found that alleged psychological coercion inflicted on domestic employee by employer, which included "yelling and verbal threats of deportation," was sufficient to constitute "condition of servitude," in violation of the Victims of Trafficking and Violence Protection Act." 844 F. Supp. at 114. In a case within the Second Circuit, Judge Brodie held that the "threat of deportation alone may support a claim for forced labor." *Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 444 (E.D.N.Y. 2013); *see also United States v. Kozminski,* 487 U.S. 931, 948 (1988) ("[T]hreatening . . . an immigrant with deportation could constitute the threat of legal coercion that induces involuntary servitude, even though such threat made to an adult citizen of normal intelligence would be too implausible to produce involuntary servitude."); *Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011) (finding that threats to, among other things, fire plaintiffs, sue them, allow their visas to expire, *or* deport them sufficiently stated a claim for forced labor); *United States v. Garcia,* No. 02-CR-110S-01, 2003 WL 22956917, at *4 (W.D.N.Y. Dec. 2, 2003) (holding that threatening deportation "clearly fall[s] within the concept and definition of 'abuse of legal process' since the alleged objective for [such conduct] was to intimidate and coerce [the plaintiffs] into 'forced labor.'"). While some courts have identified additional factors that may establish claims of abuse of legal

process for the purposes of the forced labor statute, the cases above have affirmed that threats of deportation alone are sufficient.

Moreover, courts have consistently defined "serious harm" broadly for the purposes of forced labor claims. "Serious harm, as a factor for finding liability under the Trafficking Victims Protection Reauthorization Act (TVPRA), includes threats of any consequences, whether physical or non-physical, that are sufficient under all of the surrounding circumstances to compel or coerce a reasonable person in the same situation to provide or to continue providing labor or services." *Aguirre*, 961 F. Supp. 2d at 443; *see also United States v. Calimlim*, 538 F.3d 706, 713 (7th Cir. 2008); *United States v. Bradley*, 390 F.3d 145, 151 (1st Cir. 2004). "[S]omeone is guilty of forced labor if he intends to cause a person in his employ to believe that if she does not continue to work, she will suffer the type of serious harm—physical or nonphysical, including psychological, financial, reputation harm—that would compel someone in her circumstances to continue working to avoid that harm." *United States v. Dann*, 652 F.3d 1160, 1169-70 (9th Cir. 2011).

Here, Defendant Iannaccone repeatedly threatened to "send the workers back to Mexico" if they refused to perform physically exhausting or potentially injurious tasks such as lifting oversized boxes. Amended Complaint at ¶¶ 119-120, 138-9. When the Workers asked for time off from work, or requested gloves or other equipment to protect themselves from hazardous working conditions (sharp metal objects, unsanitary water, scalding pans), Defendant Iannaccone informed them that they had "no rights here." *Id.* ¶¶ 47, 69-70, 132. These comments took place in the context of a hostile working environment in which racial invectives were used constantly. The Forced Labor Plaintiffs

suffered these threats of future abuse if they did not perform the tasks demanded. *Id.* ¶¶ 117-122. The Forced Labor Plaintiffs reasonably feared that Defendant Iannaccone would continue to cause them serious harm through the use of racial insults, derogatory treatment, and psychological abuse, (*Id.* ¶¶ 70-73, 80-81, 88-89), and that he would deploy legal process against them if they did not engage in the dangerous labor he demanded.

Thus, the Forced Labor Plaintiffs have alleged that Defendant Iannaccone made numerous threats that caused them reasonably to believe that, if they did not perform labor as to his demands, they would suffer serious harm. 18 U.S.C. § 1589(a). Defendant Iannaccone's brief incorrectly claims that "immigration harm" is the only issue alleged in the complaint. Iannaccone Motion to Dismiss at 24. The above discussion demonstrates that threats of deportation are alone sufficient to plead a claim of forced labor. Additionally, however, his threats of deportation were not the only harms at issue. The Forced Labor Plaintiffs were also led to believe they would suffer other "serious harm," including financial loss as a result of abuse of legal process and continued psychological abuse, if they did not perform the specific labor Defendant Iannaccone demanded. Threats of this nature are also sufficient to state a claim of forced labor.

> **D.    The Workers Sufficiently Allege That Defendant Iannaccone Violated the Racketeering Influenced Corrupt Organizations Act.**

The Workers allege all Defendants, including Defendant Iannaccone, "organized and participated in a criminal worker exploitation scheme designed to systemically pay illegally low wages and exploit workers for personal profit," in violation of the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). Amended Complaint ¶ 129. Defendant Iannaccone disputes this claim, arguing that not

19

enough predicate acts were sufficiently alleged to meet the elements required by the RICO statute. As discussed below, the Workers have adequately stated a claim regarding the two predicate acts Defendant Iannaccone actually discusses: witness tampering and forced labor. Even without these two predicate acts, however, the predicate acts that Defendant Iannaccone ignores—robbery or extortion, mail fraud, and wire fraud—are also sufficient to state a claim under RICO.

As a preliminary matter, Defendant Iannaccone nowhere argues that the allegations that he participated in mail and wire fraud under 18 U.S.C. §§ 1341 and 1343 by submitting fraudulent state and federal tax returns, *see* Amended Complaint ¶ 141(d), are inadequate to state a claim for relief under RICO. *See* Iannaccone Motion to Dismiss at 30 (claiming that all alleged predicate acts, other than those involving forced labor and witness tampering, "are [not] acts by Defendant Iannacone [sic]"). Nor does he dispute that the allegations that he participated in robbery or extortion under 18 U.S.C. § 1951 are inadequate to state a claim for relief under RICO. The Workers in fact allege that all Defendants, including Defendant Iannaccone, were party to the mail and wire fraud, by virtue of being the Workers' employer and an owner of the Restaurant. Amended Complaint ¶ 141(d). The Workers also allege all Defendants, including Defendant Iannaccone, took part in the robbery or extortion. *Id.* ¶ 141(c).

The allegations of these predicate acts—the sufficiency of which Defendant Iannaccone has not challenged—are enough to defeat Defendant Iannaccone's attempt to dismiss the RICO claim against him. As discussed below, Defendant Iannaccone's participation in the predicate acts of forced labor and witness tampering are also

sufficiently alleged, and the motion to dismiss the RICO claim against Defendant

Iannaccone should be denied.

The Workers have sufficiently alleged that Defendant Iannaccone's conduct

constitutes a threat of abuse of legal process under 18 U.S.C. § 1589. Threats of

deportation alone are sufficient to allege a plausible case of forced labor. *United States v.*

*Kozminski*, 487 U.S. 931 (1988); *Aguirre v. Best Care Agency, Inc.* 961 F. Supp. 2d 427

(E.D.N.Y. 2013); *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107 (D.D.C. 2012).

Additionally, Defendant Iannaccone's conduct includes other aggravating factors that

indicate he engaged in practices of forced labor.[5]

Defendant Iannaccone first challenges the sufficiency of the allegations of witness

tampering on the grounds that he was not an employer, and so the $50 payments could

not be "from" him despite his involvement in the exchange. Iannaccone Motion to

Dismiss at 28. This is incorrect. It constitutes witness tampering under federal law to

"knowingly uses intimidation, threatens, or corruptly persuades another person, or

attempts to do so . . . with intent to (1) influence, delay, or prevent the testimony of any

person in an official proceeding . . . (3) hinder, delay, or prevent the communication to a

law enforcement officer or judge of the United States of information relating to the

commission or possible commission of a Federal offense." 18 U.S.C. § 1512(b). For

purposes of this law, "an official proceeding need not be pending or about to be instituted

at the time of the offense." *Id.* § 1512(f)(1). In the context of criminal RICO, the Second

Circuit has broadly construed the activities that might qualify as witness tampering for

---

[5] Although the Workers allege forced labor as a violation of 18 U.S.C. § 1589, Defendant Iannaccone's argument to dismiss that predicate act consists primarily of a quote from *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295 (D.N.J. 2005), that addresses involuntary servitude, *see* Iannaccone Motion to Dismiss at 26-28—a different crime with different elements set forth in a different statute, *see* 18 U.S.C. § 1584. .

the purposes of establishing a predicate act. *See United States v. Amato*, 86 F. App'x 447, 450 (2d Cir. 2004) ("The section was written broadly to encompass non-coercive efforts to tamper with a witness. . . . Consequently, the government need only 'prove that the defendant's attempts to persuade were motivated by an improper purpose.'" (internal citations omitted)).

The Workers meet this standard for witness tampering with the allegations in their Amended Complaint. They allege that Defendant Iannaccone provided Mr. M. Morales and Mr. Perez with an additional $50 per week. Amended Complaint, at ¶¶ 134, 136. In Mr. Morales' case, Defendant Iannaccone said he was being paid the money because "he had too much going on his life to go to court," or words to that effect. *Id.* ¶ 134. In Mr. Perez's case, Defendant Iannaccone spoke with him about the extra payment, and made him to understand that the money was to discourage him from providing information and testimony regarding Defendants' violations of federal law. *Id.* ¶ 136. Defendant Iannaccone's actions were an attempt to prevent the testimony of Mr. Perez and Mr. Morales in a potential wage theft case, as well as an attempt to prevent both workers from communicating all Defendants' violations of FLSA and TVPRA to law enforcement officials. The specific mention of his desire to go to avoid court speaks to this point. *Id.* ¶ 134.

Second, Defendant Iannaccone argues that he did not knowingly corruptly persuade the Workers, or attempt to do so. Iannaccone Motion to Dismiss at 29 (citing *Arthur Andersen LLP v. U.S*, 544 U.S. 696 (2005)). In *Arthur Andersen*, the Supreme Court held that "[i]f the defendant lacks knowledge that his actions are likely to affect the judicial proceeding . . . he lacks the requisite intent to obstruct." 544 U.S. at 708.

The Workers in fact sufficiently plead such knowledge. First, Defendant Iannaccone repeatedly discussed the Gourmet Heaven case with Mr. Morales. Amended Complaint, ¶ 131. In conversation with Mr. Morales after giving him the extra $50 a week, Defendant Iannaccone mentioned the Gourmet Heaven case and told Mr. Morales that he had too much going on in his life to go to court, or words to that effect. *Id.* ¶ 134. In his conversation with Mr. Perez, Defendant Iannaccone caused Mr. Perez to understand that the money was to discourage him from providing information and testimony regarding Defendants' violations of federal law. *Id.* ¶ 136.

Specific mention of past wage theft cases and a stated desire to not go to court in conjunction with the payments, as well as his more direct conversation with Mr. Perez, demonstrate knowledge of these potential future judicial proceedings, and constitutes a "knowing" attempt to "corruptly persuade" both workers "with intent to . . . prevent [their] testimony . . . in an official proceeding [this case]" and "prevent . . . the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense," namely, Defendants' violations of FLSA and CMWA. 18 U.S.C. § 1512(b); Amended Complaint, ¶ 141. He attempted to persuade Mr. Perez and Mr. Morales not to provide testimony to his continued violations of these laws, nor communicate them to law enforcement officials, like those at the Department of Labor who had investigated him, conscious of [his] wrongdoing" in trying to avoid being held responsible. *Arthur Andersen*, 544 U.S. at 705. In both instances, the Workers have sufficiently alleged Defendant Iannaccone's commission of the predicate act of witness tampering.

**E.    This Court Has Jurisdiction Over the Workers' Discrimination Claims Because § 1981 Has No Administrative Exhaustion Requirement**

Defendant Iannaccone argues that the Workers' discrimination claims are "not within the jurisdiction of this Court." Iannaccone Motion to Dismiss at 30. This conclusion, however, is founded on a fundamental misstatement of the claims brought by the Workers. The Workers seek redress for Defendant Iannaccone's discrimination *not* under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., as Defendant Iannaccone erroneously claims, but under 42 U.S.C. § 1981.

Defendant Iannaccone fails to advise the Court that unlike with Title VII, § 1981 has no administrative exhaustion requirement. There is none in the statute, and courts have long recognized that there is no requirement that victims of discrimination seek administrative remedies before bringing suit under § 1981. *Goss v. Revlon, Inc.*, 548 F.2d 405 (2d. Cir. 1976) ("[T]he failure of a claimant to properly pursue his administrative remedies before the EEOC and the appropriate state agency . . . does not preclude him from instituting an action under § 1981."); *Brown v. New Haven Civil Service Board*, 474 F. Supp. 1256 (D. Conn. 1979) (same); *Grant v. Morgan Guarantee Trust Co. of New York*, 548 F. Supp. 1189 (S.D.N.Y. 1982) (same). It is clear from both the statutory text and from precedent that the Workers' discrimination claims under § 1981 have no administrative exhaustion requirement, and Defendant Iannaccone offers not contrary authority. This Court has jurisdiction over these claims.

**F.    The Complaint Alleges Extreme and Outrageous Conduct by Defendant Iannaccone that States a Claim for Intentional Infliction of Emotional Distress.**

Defendant Iannaccone contends that the Complaint's claim of intentional

infliction of emotional distress ("IIED") merely produces "a formulaic recitation of the . . . elements," and should therefore be dismissed. Iannaccone Motion to Dismiss at 32. To support his argument, Defendant Iannaccone ignores the abundant allegations that pertain to Defendant Iannaconne's abusive and outrageous conduct toward Plaintiffs Perez, M. Morales, U. Morales, Ceron, and Gonzalez ("IIED Plaintiffs"). These allegations more than suffice to state a claim for IIED.

Under Connecticut law, a plaintiff states a claim for IIED by alleging: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Allen v. Egan*, 303 F. Supp. 2d 71, 78 (D. Conn 2004). In addition to these four elements, the plaintiff "also must allege facts sufficient to support them." *Smith v. City of New Haven*, 166 F. Supp. 2d 636, 645 (D. Conn. 2001). Connecticut courts have resisted "imposing a heightened standard on IIED claims in the employment context," or finding that "the burden for making out the 'extreme and outrageous' prong of IIED claims was any higher than in other contexts." *Bakhit v. Safety Markings, Inc.*, 33 F. Supp. 3d 99, 104 (D. Conn. 2014).

The Amended Complaint describes in detail how Defendant Iannaccone harassed and mocked the IIED Plaintiffs, calling them on off days to demand work and yelling racial slurs. *See, e.g.*, Amended Complaint at 1-2 ("The Defendants . . . berat[ed] and belittl[ed] their workers with racist, xenophobic, and homophobic slurs . . . demanded the Workers keep the kitchen door open in the dead of winter, denied them meal breaks,

required them to lift dangerously heavy boxes without proper equipment . . . ."); *id.* ¶ 62 ("[Defendant Iannaccone] routinely screamed at Mr. Perez and other Workers, referring to them as 'dogs,' 'fucking Mexicans,' 'animals,' and 'faggots,' in both English and Spanish."); *id.* ¶ 122 ("Defendants subjected [Mr. Perez, M. Morales, U. Morales, and Gonzalez] to intense psychological and verbal abuse on an almost-daily basis"); *id.* ¶¶ 60-61 (describing the Restaurant kitchen's lack of safety equipment and dangerous atmosphere).

The Amended Complaint further alleges a host of outrageous conduct by Defendant Iannaccone directed toward particular IIED Plaintiffs. *See, e.g.*, *id.* ¶¶ 58-59 (describing how Defendant Iannaccone threatened and yelled racial slurs at Mr. Perez— including "you fucking Mexican"—in order to get him to lift dangerously heavy boxes, despite Mr. Perez having informed him of a pre-existing back condition); *id.* ¶ 81 ("Defendant Iannaccone often referred to Mr. Ceron as 'fucking Mexican,' 'pandejo,' and other derogatory racial epithets."); *id.* ¶ 89 ("On numerous occasions, Defendant Iannaccone used homophobic slurs to describe Mr. Gonzalez, including 'faggot,' in both English and Spanish."). Although some amount of stress in the workplace may be common, this is far from the type of distress that "individuals [in the workplace] reasonably should expect to be subject to." *Perodeau v. City of Hartford*, 792 A.2d 752, 768 (Conn. 2002).

The Amended Complaint states that Defendant Iannaccone "intentionally engaged in extreme and outrageous conduct which [he] knew or should have known would inflict severe emotional distress on the IIED Plaintiffs," *id.* ¶ 157, that the IIED Plaintiffs suffered emotional distress as a result of Defendant Iannaccone's actions, *id.* ¶ 161, and

that this emotional distress was severe, *id.* ¶ 160. In short, "Defendant Iannaccone's conduct which intentionally inflicted [emotional] distress included systemic abuse, criticism and harassment of the IIED Plaintiffs in the workplace." *Id.* ¶ 159.

These allegations, accepted as true, are more than enough "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (explaining the plausibility standard for a Rule 12(b)(6) motion to dismiss). Far from "conclusory" or "simplistic" allegations, they detail numerous incidents and patterns of conduct that meet the elements of intentional infliction of emotional distress. Defendant Iannaccone's motion to dismiss the Amended Complaint's IIED claims should therefore be denied.

### G.   The Complaint States a Claim for Relief Based on Defendant Iannaccone's Negligent Infliction of Emotional Distress.

In order to state a claim for negligent infliction of emotional distress ("NIED"), a plaintiff must allege that: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Davis v. Davis*, 962 A.2d 140, 147 (Conn. App. Ct. 2009).

Defendant Iannaccone does not challenge any of the above elements, but instead argues that Mr. Perez, M. Morales, U. Morales, Ceron, and Gonzalez ("NIED Plaintiffs") fail to state an NIED claim because their allegations supposedly "rely upon conduct occurring prior to their alleged termination." Iannaccone Motion to Dismiss at 34. He correctly cites *Perodeau v. City of Hartford*, 792 A.2d 752 (Conn. 2001), for the notion that Connecticut law requires that an NIED cause of action in an employment context

27

relate to conduct involving the employee's termination, but Connecticut courts have held that constructive discharge may provide the basis for an NIED claim. *See Deliste v. Metro-North R.R. Co.*, 646 F. Supp. 2d 288, 292 (D. Conn 2009); *Grey v. Norwalk Bd. of Educ.*, 304 F. Supp. 2d 314, 323 (D. Conn. 2007). Further, Defendant Iannaccone claims that all NIED Plaintiffs except Mr. Gonzalez fail to allege that they were terminated at all. *Id.* at 35. Because the Amended Complaint plainly alleges that Defendant Iannaccone engaged in NIED during the NIED Plaintiffs' terminations—including during the constructive discharges of Mr. Ceron, M. Morales, and U. Morales—the present Motion to Dismiss should be denied as to this claim.

Defendant Iannaccone's claim that "only one (1) [sic] NIED Plaintiff – Carlos Gonzalez – actually claims that his employment was terminated" misconstrues the allegations of the Amended Complaint, which establish that each NIED Plaintiff was terminated either directly or through constructive discharge. The Amended Complaint refers specifically to the termination of Mr. Perez and Mr. Gonzalez. *Id.* ¶ 52 (Mr. Perez); ¶ 91 (Mr. Gonzalez). The Amended Complaint also details a range of egregious conduct by Defendant Iannaccone that placed the NIED Plaintiffs at unreasonable risk for emotional distress. *See* Part III.F, *supra*. It further states that "Defendant Iannaccone's conduct that involved an unreasonable risk of causing distress occurred in part during the termination of employment of each NIED Plaintiff." Amended Complaint ¶ 167. This statement, in conjunction with the alleged pattern of extreme and abusive conduct by Defendant Iannaccone, *see* Part III.F, *supra*, lead to the reasonable inference that the remaining NIED Plaintiffs—Mr. Ceron, M. Morales, and U. Morales—were constructively discharged. *See Papelino*, 633 F.3d at 85 n.1 (2d Cir. 2011) (holding that

on a motion to dismiss a court shall construe all factual allegations and reasonable inferences therefrom in the light most favorable to plaintiffs). The plain language and reasonable inferences of the Amended Complaint thus collectively allege that each NIED Plaintiff was either terminated or constructively discharged, and that Defendant Iannaccone committed NIED in the course of their terminations or constructive discharges.

Defendant Iannaccone's assertions that the NIED claim relies upon conduct outside the NIED Plaintiffs' terminations, and that "no facts are alleged as to the actual claimed terminations," is similarly misplaced. *See* Iannaccone Motion to Dismiss at 34-35. The Plaintiffs detail a pattern of conduct by Defendant Iannaccone which amounts to NIED and state that this conduct "occurred in part during the termination of employment of each NIED Plaintiff." Amended Complaint ¶ 167. The NIED Plaintiffs thus allege that Defendant Iannaccone engaged in NIED against them in the course of their termination or constructive discharge. The fact that such unacceptable conduct also proliferated outside of the termination context does nothing to limit Defendant Iannaccone's liability in this regard. *See Perodeau*, 792 A.2d at 768 (finding that NIED liability does not arise from conduct outside of the termination context—not that *alleging* similar conduct outside of this context precludes liability). Defendant Iannaccone's argument thus amounts to the bizarre and novel theory that a complaint may not, in the course of establishing the required elements of a claim, refer to conduct that does not itself count toward that claim.

The NIED Plaintiffs therefore assert that Defendant Iannaccone engaged in negligent infliction of emotional distress in the course of their terminations. Because

Defendant Iannaccone declines to otherwise argue how these allegations fail to state a claim, the Court should deny the Motion to Dismiss as to the NIED claim.

## IV.     Conclusion

For the foregoing reasons, Defendant Iannaccone's Motion to Dismiss the Amended Complaint rests upon a misconstrual of fact and law, and should be dismissed in its entirety.

Respectfully,

_____/s/ Michael J. Wishnie_____
Michael J. Wishnie, Supervising Attorney (ct27221)
A. Nicole Hallett, Supervising Attorney (ct28495)
Will Bloom, Law Student Intern
Jordan Laris Cohen, Law Student Intern
Zachary Manfredi, Law Student Intern
Adan Martinez, Law Student Intern
Joshua Nuni, Law Student Intern

JEROME N. FRANK
LEGAL SERVICES ORGANIZATION
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090
Phone: (203) 432-4800

*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was e-filed by Plaintiffs and served by regular mail on anyone unable to accept electronic filing, on October 12, 2015. Notice of this e-filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated in the Notice of Electronic filing. Parties may access this filing through the Court's CM/ECF System.

William A. Ryan (ct15530)
Eric M. Desmond (ct27798)
Ryan & Ryan, LLC
900 Chapel Street, Suite 621
New Haven, Connecticut 06510
Telephone:203-752-9794
Facsimile:203-785-1547
e-mail: william.ryan@ryan-ryan.net
e-mail: eric.desmond@ryan-ryan.net

For the Defendant, Genarro Iannaccone.

Attorney Donn A. Swift (ct05247)
Attorney Matthew D. Popilowski (ct28869)
Lynch, Traub, Keefe & Errante, P.C.
52 Trumbull Street New Haven, Connecticut 06510
Phone: 203.787.0275
e-mail: dswift@ltke.com
e-mail: mpopilowski@ltke.com

For the Defendants, Goodfellas Café, LLC, Andrea Coppola, Francesco Aurioso, and AC702 LLC.

 /s/ Michael J. Wishnie
Michael J. Wishnie, Esq. ct27221
Jerome N. Frank Legal Services Organization
Yale Law School
127 Wall Street
New Haven, CT 06511
Telephone:  (203) 432-4800
Facsimile:  (203) 432-1426
Email: michael.wishnie@yale.edu