# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

_____
)
ABIMAEL PEREZ, ISAIN CERON, )
MISAEL MORALES, ULBER MORALES, )
CARLOS GONZALEZ, and JORGE )
MELCHOR, )
 )
   *Plaintiffs,* )
 ) No. 3:15-cv-00642-CSH
  v. )
 )
GOODFELLAS CAFE LLC, AC702 LLC, )
GENNARO IANNACCONE, ANDREA ) November 12, 2015
COPPOLA, and FRANCESCO AURIOSO, )
 )
   *Defendants.* )
_____)


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF FRANCESCO AURIOSO, ANDREA COPPOLA, AND GOODFELLAS CAFE, LLC

Will Bloom, Law Student Intern
Jordan Laris Cohen, Law Student Intern
Zachary Manfredi, Law Student Intern
Adan Martinez, Law Student Intern
Joshua Nuni, Law Student Intern
Michael J. Wishnie, Supervising Attorney (ct27221)
A. Nicole Hallett, Supervising Attorney (ct28495)
JEROME N. FRANK LEGAL SERVICES ORG.

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................... 1

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................ 2

III.  ARGUMENT ........................................................................................ 4

    A.  Standard On Motion To Dismiss .................................................... 4

    B.  The Workers Have Sufficiently Alleged That Defendant Aurioso Was Their
        Employer Under FLSA And The CMWA. ........................................ 4

        1.  Defendant Aurioso Was An Employer Under FLSA .................................. 4

        2.  Defendant Aurioso Was An Employer Under CMWA ................................ 9

    C.  The Forced Labor Plaintiffs Have Sufficiently Pled A Claim For Relief
        Against Defendants Coppola And Aurioso .................................... 11

    D.  The Workers Sufficiently Allege That Defendants Violated The
        Racketeering Influenced Corrupt Organizations Act .................................. 15

    E.  The Amended Complaint States A Claim Of Discrimination Under § 1981
        Against Defendants Aurioso And Coppola ........................................ 17

        1.  Defendants Aurioso And Coppola Are Employers Under § 1981 ............... 18

        2.  Defendants Aurioso And Coppola Are Liable As Joint Employers For The
            Discrimination Against Section 1981 Plaintiffs ......................................... 21

        3.  The Workers Sufficiently Allege Coppola And Aurioso's Conduct Violated
            § 1981 .................................................................... 25

    F.  This Court Has Jurisdiction Over The Workers' Discrimination Claims
        Because § 1981 Has No Administrative Exhaustion Requirement .............. 25

    G.  The Workers Have Sufficiently Alleged That Goodfellas Cafe, LLC Is A
        Proper Defendant ........................................................................ 27

IV.  CONCLUSION ................................................................................. 29

I.     **INTRODUCTION**

Plaintiffs Abimael Perez, Isain Ceron, Misael Morales, Ulber Morales, Carlos Gonzalez and Jorge Melchor (collectively, the "Workers") allege that the Defendants engaged in a criminal conspiracy—furthered through fraud and forced labor—to exploit their labor and deny them access to justice. The Workers have pled claims against Defendants Francesco Aurioso, Andrea Coppola, and Goodfellas Cafe, LLC that state claims for relief for Defendants' violations of the Workers' legal rights, deprivations of their earnings, and infliction of serious harm.

In an effort to avoid responsibility for their actions, Defendants Coppola and Aurioso stage a game of hot potato with their co-defendant, Gennaro Iannaccone. Defendants attempt to pass the blame between each other, arguing here that Defendant Iannaccone is solely responsible for many of the wrongs the Workers allege. *See* ECF No. 26 [hereinafter "Amended Complaint"]. Meanwhile Defendant Iannaccone—who is Defendant Coppola's long-time business and romantic partner—tries to shift blame in his motion to dismiss to Defendants Coppola and Aurioso by misrepresenting himself as a mere "employee" of Goodfellas Restaurant when the alleged facts and legal standards unequivocally establish that he is an employer. ECF No. 40-1 [hereinafter "Iannaccone Motion"]. Despite this calculated charade of shifting blame, all Defendants are working in concert, with Defendants Goodfellas Cafe, LLC, Coppola, and Aurioso incorporating by reference whole swaths of Defendant Iannaccone's previous motion to dismiss.

The Workers adequately allege that Defendants Coppola and Aurioso engaged in a criminal conspiracy that violated federal and state labor and employment law, employed forced labor, and created an unlawfully racist and xenophobic working

environment. The Workers also sufficiently allege that Defendant Goodfellas Cafe, LLC is a proper defendant in this case, as it has an ownership stake in Goodfellas Restaurant. Defendants' Motion to Dismiss misconstrues both the law and facts as alleged in the Amended Complaint and should be denied in its entirety.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

As alleged in the Amended Complaint, Goodfellas Restaurant ("the Restaurant" or "Goodfellas") in New Haven, Connecticut and its owners and managers are repeat violators of labor and employment law. In recent years, federal labor officials have twice investigated the Restaurant and Defendants and each time found numerous violations of labor and employment law. ECF No. 26, Amended Complaint, ¶¶ 28-34. At the close of these prior investigations, Defendants promised to abide by minimum wage and overtime laws. *Id.* at 2, ¶¶ 30, 33. Defendants have violated their representations and continue to operate a business built on exploitation and abuse. Plaintiffs Abimael Perez, Isain Ceron, Misael Morales, Ulber Morales, Carlos Gonzalez, and Jorge Melchor, former employees of Goodfellas, have filed this lawsuit to obtain compensation for stolen wages and physical and emotional injuries—and to bring the Defendants' criminal activities to an end.

The Amended Complaint alleges that Defendants engaged in a pattern of abuse and illegal activities against their workers. The Defendants refused to pay the Workers in accordance with state and federal minimum wage and overtime laws. *Id.* at 1. Instead, they paid each Plaintiff a standard rate of $500 per week for an approximately seventy-two hour workweek. *Id.* ¶¶ 25, 38, 51, 66, 77, 84, 94. The Defendants berated and belittled the Workers with racist, xenophobic, and homophobic slurs, referring to them as

"dogs," "fucking Mexicans," "animals," and "faggots." *Id.* ¶¶ 62, 81. The Workers also describe how Defendants subjected them to physically punishing conditions, demanding that the Workers keep the kitchen door open in the dead of winter, denying them meal breaks, requiring them to lift dangerously heavy boxes without proper equipment, and forcing them work with sharp items and hot surfaces without protection in an exceptionally harried and careless atmosphere. *Id.* ¶¶ 1-2.

The Workers further allege that Defendants employed fraud and deception to conceal their crimes from the authorities in violation of the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, *see* Amended Complaint ¶¶ 125-147; *see also* ECF No. 22, RICO Case Statement, and have threatened and intimidated their workers in order to prevent them from seeking legal redress. Amended Complaint ¶¶ 134-136 (describing how Defendant Iannaccone increased the weekly pay of Mr. M. Morales and Mr. Perez by $50 as a means of corruptly dissuading them from testifying to federal officials).

Mr. Perez, Mr. Ceron, Mr. M. Morales, Mr. U. Morales, and Mr. Gonzalez brought these claims in a federal complaint on May 1, 2015. ECF No. 1. On July 30, 2015 the Workers filed an Amended Complaint that added Mr. Melchor as a Plaintiff and AC702, LLC as a Defendant. ECF No. 26. Defendants Goodfellas Cafe, LLC, AC702, LLC, Aurioso, and Coppola informally requested that the deadline for their response to the Amended Complaint be continued to the same date as that of their co-defendant, Defendant Iannaccone, who filed a motion for extension of time until September 21. ECF No. 29.

Defendants Goodfellas Cafe, LLC, Aurioso, and Coppola did not answer, file a

motion directed at the Amended Complaint, ask for an extension of time from this Court, or otherwise act on the Amended Complaint until Workers asked them if they planned to respond to the Amended Complaint on September 30, 2015 at which point these Defendants asked for a further extension until October 8, 2015, when they filed this motion to dismiss. ECF No. 44.

AC702, LLC has neither moved to dismiss nor filed an answer. Its counsel has yet to respond to multiple inquiries from counsel for the Workers. Accordingly, AC702, LLC is currently in default and the Workers will have no choice but to move separately for entry of default against this Defendant.

## III.    ARGUMENT

### A.    Standard On Motion To Dismiss

For a complaint to survive a motion to dismiss under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true," to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Court must accept as true all the factual allegations in the complaint and construe all reasonable inferences therefrom in the light most favorable to plaintiffs. *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 85 n.1 (2d Cir. 2011). The Second Circuit has made clear that the plausibility standard "does not impose a probability requirement at the pleading stage," but merely asks whether the complaint presents sufficient facts to "permit a reasonable inference" that the plaintiffs have stated a claim. *Anderson News, LLC v. American Media, Inc.*, 680 F.3d 162, 168 (2d Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

### B.    The Workers Have Sufficiently Alleged That Defendant Aurioso Was Their Employer Under FLSA And The CMWA

4

Under both federal and state wage and hour law, Defendant Aurioso was an employer of the Workers. He meets both the economic reality test under federal law and the "authority and control" test under state law.

### 1.     Defendant Aurioso Was An Employer Under FLSA

The Workers have sufficiently alleged that Defendant Aurioso was an employer under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), at all relevant times. FLSA defines an "employee" as "any individual employed by an employer." *Id.* § 203(e)(1). A person or entity "employs" an individual under FLSA if that person or entity "suffer[s] or permit[s]" the employee to work. *Id.* § 203(g).

It is well established that Congress intended FLSA's definitions of "employee," "employer," and "employs" to be exceedingly broad "in accordance with the remedial purpose of the FLSA." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir. 2003); *see also Falk v. Brennan*, 414 U.S. 190, 195 (1973); *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945); *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984) ("[The FLSA] statute is a remedial one, written in the broadest possible terms so that the minimum wage provisions would have the widest possible impact in the national economy."). A single individual can have more than one employer for the same employment relationship under FLSA. 29 C.F.R. § 791.2 (establishing joint employer liability under FLSA).

A person "suffers or permits" an individual to work, and is therefore that person's employer, if, "as a matter of 'economic reality,' the entity functions as the individual's employer." *Zheng*, 355 F.3d at 66; *see also Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) ("[E]conomic reality, rather than technical concepts, is . . . the test of

employment."). In *Carter v. Dutchess Community College*, the Second Circuit held that economic reality "is understood to include inquiries into whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* The court explained that "[t]he power to control a worker clearly is a crucial factor in determining whether an employment relationship exists." 735 F.2d at 12 (citations omitted). A putative employer need not meet all four parts of the test to be found to be an employer, as the test addresses the "totality of circumstances." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

In *Zheng*, the Second Circuit refined the "economic reality" test, clarifying that the test "demands that a district court look beyond an entity's formal right to control the physical performance of another's work before declaring that the entity is not an employer under the FLSA." 355 F.3d at 69. Though the *Zheng* panel made clear that the *Carter* factors were often sufficient to establish employer status, it offered an additional six functional control factors for district courts to consider, *id.* at 72,[1] stressing that "the court is also free to consider *any other factors* it deems relevant to its assessment of the economic realities." *Id.* at 71-72 (emphasis added).

In this case, the Workers have sufficiently alleged that Defendant Aurioso is an employer under the economic reality test established by *Carter* and *Zheng*. First, as

---

[1] The *Zheng* panel also "found relevant" in the circumstances of that case: "(1) whether [the putative employer]'s premises and equipment were used for the plaintiffs' work; (2) whether the [undisputed employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [putative employer]'s process of production; (4) whether responsibility under the contracts could pass from one [undisputed employer] to another without material changes; (5) the degree to which the [putative employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [putative employer]." *Id.*

alleged in the Amended Complaint, Defendant Aurioso had the power to hire and fire the Workers. Amended Complaint ¶¶ 13, 17, 19, 102. Second, the Amended Complaint alleges that Defendant Aurioso supervised employees and had control over work schedules and conditions of employment. *Id.* ¶¶ 13, 17, 18, 19, 20, 32, 102. Third, the Amended Complaint alleges that Defendant Aurioso determined the rate and method of payment to the Workers. *Id.* ¶¶ 13, 17, 19, 32, 102. These allegations are supported by the finding of a U.S. Department of Labor ("USDOL") investigation, detailed in the Amended Complaint, that Defendant Aurioso was individually responsible for the Restaurant's violation of labor laws. *Id.* ¶ 32. The Amended Complaint did not contain an allegation that Defendant Aurioso maintained employment records because Defendants "[f]ailed to keep adequate records as required by law." *Id.* ¶ 21.[2]

Adequately alleging three of the four *Carter* factors is sufficient for a finding of employer status—especially where the absence of the fourth factor is due to the employer's own independent FLSA recordkeeping violation. *Herman*, 172 F.3d at 139-140 (finding employer status even in the absence of evidence that employer was involved in recordkeeping). In addition, the Second Circuit has found that it is in keeping with the "broad remedial purpose" of FLSA to have an "expansive interpretation" of FLSA's definition of "employer," since "[t]he statute provides an empty guarantee absent a financial incentive for individuals with control, even in the form of delegated authority, to comply with the law, and courts have continually emphasized the extraordinarily

---

[2] Defendant Aurioso cannot argue that his statutory recordkeeping violations exempt him from his statutory duties to pay minimum wage and overtime as an employer. *See Fermin v. Las Delicias Peruanas Restaurant, Inc.*, No. 14–CV–0559 (RRM)(VMS), 2015 WL 1285960 (E.D.N.Y. Mar. 19, 2015), at * 14 ("The fact that Individual Defendants did not keep employment records does not undermine this finding [of employer status] because no employment records were kept; thus, the economic reality is that all employer tasks that were handled by the Individual Defendants."); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (holding that an employee cannot be penalized for an employer's failure to keep adequate records and adjusting evidentiary burdens to account for employer recordkeeping violations).

generous interpretation the statute is to be given." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013). Taking the allegations as true on this Rule 12(b)(6) motion, Defendant Aurioso was an employer under FLSA.

Additionally, while *Zheng* primarily spoke to the broad "totality of the circumstances" approach for determinations of employer status, 355 F.3d at 76, many of the non-exhaustive factors applied to the specifics of *Zheng* further confirm Defendant Aurioso's employer status. The Workers performed discrete jobs integral to Defendant Aurioso's business of managing the Restaurant. Amended Complaint ¶¶ 44, 57, 69, 76, 87, 99. In addition, Defendant Aurioso's role in paying the Workers, and the USDOL finding that he was partly responsible for the Restaurant's violation of other workers' workplace rights, demonstrate the high degree to which Defendant Aurioso personally supervised the Workers' work. *Id.* ¶¶ 13, 17, 18, 19, 20, 32, 102.

Moreover, the fact-intensive nature of the economic reality test under FLSA means that it is rarely appropriate to decide such claims on a motion to dismiss, or even a motion for summary judgment. *Barfield v. New York City Health and Hospitals Corp.* 537 F.3d 132, 143-44 (2d Cir. 2008) ("Because of the fact-intensive character of a determination of joint employment, we rarely have occasion to review determinations made as a matter of law on an award of summary judgment."); *Wu v. Chang's Garden of Storrs, LLC*, No. 3:08-CV-746 (WWE), 2010 WL 918079 at *3 (D. Conn. Mar. 11, 2010) ("[T]he Second Circuit has commented that it is rare that an employer determination can be made on summary judgment.").

Defendant Aurioso offers no arguments of his own in support of his argument that there is no claim against him under FLSA, saying only that the Workers' claims "fail for

the same reason they fail against defendant Iannacone [sic]" and incorporating those arguments by reference. ECF No. 44, Memorandum of Law in Support of Motion to Dismiss by Goodfellas Café, LLC, Francesco Aurioso and Andrea Coppola, 9 [hereinafter "Goodfellas Motion to Dismiss"]. In accordance with Defendant Aurioso's incorporation by reference of Defendant Iannaccone's arguments, the Workers incorporate by reference their response to Defendant Iannaccone's argument. ECF No. 45, Plaintiffs' Memorandum of Law in Opposition to Defendant Gennaro Iannaconne's Motion to Dismiss, 10-12 [hereinafter "Workers' First Memorandum in Opposition"].

Defendant Iannaccone's arguments as to why he is not liable under FLSA do not rely on relevant authority, and he fails to show that Plaintiffs have insufficiently pled his employer status under FLSA. Having incorporated Defendant Iannaccone's arguments by reference, Defendant Aurioso's arguments are similarly ineffective. Accordingly, his motion to dismiss the FLSA claim against him should be denied.

### 2.     Defendant Aurioso Was An Employer Under CMWA

The Workers have sufficiently alleged that Defendant Aurioso was the Workers' employer for the purposes of the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31-58, et seq. ("CMWA"). Under CMWA, an employer "includes any individual . . . employing any person" and an employee "includes any person suffered or permitted to work by an employer." *Id.* § 31-71a. In light of CMWA's remedial purpose, and consistent with the statute's legislative intent, Connecticut courts have broadly construed the definition of employer. *See, e.g.*, *Butler v. Hartford Technical Institute, Inc.*, 243 Conn. 454, 463 (Conn. 1997) ("Our interpretation of the term employer as used in § 31-72, in contrast to the defendant's narrow construction, effectuates the statutory policies of

compensating employees and deterring employers from failing to pay wages."). The Supreme Court of Connecticut has held that the term "employer" means "an individual who possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages" and that individuals within a corporate employer can also be employers. *Id.* at 462-63.

Under this standard, the Workers have sufficiently alleged that Defendant Aurioso is their employer. As alleged in the Amended Complaint, Defendant Aurioso paid the workers their wages. Amended Complaint ¶ 13, 17. In addition, Defendant Aurioso, along with the other individual defendant, "collaboratively determined work schedules" for the Workers. *Id.* ¶ 20. Furthermore, Defendant Aurioso had authority and control over the hours and pay of the workers. These allegations all support a finding that the Workers have sufficiently alleged employer status under CMWA.

In his motion to dismiss the CMWA claims against him, Defendant Aurioso cites two cases. The first, *Butler v. McIntosh*, 1997 WL 112010 (Conn. Super. Ct. 1997), is an unpublished Superior Court opinion decided prior to the Connecticut Supreme Court's articulation of the standard for employer status in *Butler v. Hartford Technical Institute*, which has been recognized as the controlling interpretation of the statutory definition of "employer." *See, e.g.*, *Datto Inc. v. Braband*, 856 F. Supp. 2d 354, 377 (D. Conn. 2012) ("Although previously courts in Connecticut diverged on the question of whether an individual could be considered an employer under Connecticut's wage protection statutes, in *Butler v. Hartford Technical Institute, Inc.*, the Connecticut Supreme Court resolved the question." (citations omitted)). Moreover, *Butler v. McIntosh* merely states that employer status requires more than "supervising a worker" or "signing a worker's

payroll check." *McIntosh*, 1997 WL 112010, at *3. Indeed, the court recognized that having "authority to hire or fire," which the Workers have alleged here, could be sufficient. *Id.*; Amended Complaint ¶ 13.

Second, Defendant Aurioso quotes extensively from *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132 (2d Cir. 1999), a case that—contrary to the Defendants' contention— concerns the economic reality test under FLSA, not under the CMWA. Defendants fail to advise this Court, furthermore, that in *Butler v. Hartford Technical Institute, Inc.*, the Connecticut Supreme Court "declined to adopt the 'economic reality' test that the Second Circuit uses to define an employer under the FLSA." *Morales v. Cancun Charlie's Restaurant*, No. 3:07-cv-1836 (CFD), 2010 WL 7865081, at *6 (D. Conn. 2010); *see also Butler*, 243 Conn. at 462 n.8 ("[I]t is unnecessary for us to adopt, as the plaintiff requests, the 'economic reality' test used in cases involving the Federal Labor Standards Act to determine if an individual meets the status of employer"). Any discussion of the FLSA economic reality test in *Herman* is inapplicable to employer status under the CMWA. Even if the Second Circuit's economic reality test were applicable to CMWA's definition of employer, as explained above, the allegations of the Amended Complaint meet that test.

Defendant Aurioso's challenge to his liability under CMWA relies on obsolete case law and misrepresentations of judicial opinions that have nothing to do with the CMWA. Since he presents no valid arguments in support of his challenge, his motion to dismiss the CMWA claim against him should be denied.

**C.    The Forced Labor Plaintiffs Have Sufficiently Pled A Claim For Relief Against Defendants Coppola And Aurioso**

Workers Abimael Perez, Misael Morales, and Carlos Gonzalez (collectively, the "Forced Labor Plaintiffs") have adequately pled a claim under the Trafficking and Victims Protection Reauthorization Act (TVPRA) against Defendants Coppola and Aurioso.[3] The Forced Labor Plaintiffs hereby incorporate their response from the first Memorandum in Opposition with regard to their subjection to conditions of forced labor by Defendant Iannaccone. Workers' First Memorandum in Opposition 15-19.

To allege a claim of forced labor under TVPRA, a plaintiff must make a plausible case that the defendant "knowingly provide[d] or obtain[ed] the labor or service of a person" by "threats of serious harm" or "the abuse or threatened abuse of law or legal process," or by a pattern or scheme to do the same. 18 U.S.C. § 1589 (a) (2)-(4). The TVPRA defines "harm" broadly as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Id.* § 1589(c)(2). "The threat of deportation may itself constitute a threat sufficient to satisfy the second element of forced labor." *Shukla v. Sharma*, No. 07-CV-2972 CBA CLP, 2012 WL 481796, at *4 (E.D.N.Y. Feb. 14, 2012);[4] *see also United States v. Kozminski,* 487 U.S. 931, 948 (1988); *United States v. Calimlim,* 538 F.3d 706, 713 (7th Cir. 2008).

TVPRA allows for a private right of action against both direct perpetrators of forced labor and also "whoever knowingly benefits, financially or by receiving anything

---

[3] Plaintiff U. Morales voluntarily dismissed his Forced Labor claim against all Defendants. ECF No. 47.
[4] In *Shukla*, the court also held that even if the threats of deportation were determined to be "puffery," "a reasonable person of plaintiff's background and circumstances could still fear that [Defendants] might contact the authorities if plaintiff was uncooperative." 2012 WL 481796, at *4.

of value from participation in a venture which that person knew or should have known has engaged in an act in violation" 18 U.S.C. § 1595(b). Congress specifically amended TVPRA in 2008 in order to expand the scope of civil liability for those who did not directly perpetrate forced labor. H.R. Rep. 110–430, at 55 (2007). *See also Adhikari v. Daoud & Partners,* No. 09-CV-1237, 2013 WL 4511354, at *9 (S.D. Tex. Aug. 23, 2013) ("Only in 2008 did Congress amend § 1595 to enhance[ ] the civil action by providing that an action is also available against any person who knowingly benefits from trafficking." (internal quotation marks omitted)); *Stein v. World-Wide Plumbing Supply Inc.,* 71 F. Supp. 3d 320, 329 (E.D.N.Y. 2014) (Section 1593A makes it a crime for someone to "knowingly benefit [], financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of section 1581(a) . . . or 1595(a), knowing or in reckless disregard of the fact that the venture has engaged in such violation."). In order to prevail against the present motion to dismiss, the Forced Labor Plaintiffs need only allege that Defendants Coppola and Aurioso (1) knew or should have known about the practices of forced labor taking place at the Restaurant and (2) benefited, financially or by receiving anything else of value, from such practices.

Congress deliberately expanded the scope of civil TVPRA liability to apply to Defendants like Aurioso and Coppola. As alleged in the Amended Complaint, both Defendants Aurioso and Coppola worked closely with Defendant Iannaccone and engaged in a criminal conspiracy designed to benefit from the forced labor of the workers. Defendants Coppola and Iannaccone shared an office and were both business partners and romantic partners. Amended Complaint ¶¶ 12, 14. Defendant Aurioso worked in the kitchen environment with Defendant Iannaccone regularly. *Id.* ¶ 13.

13

Defendants Coppola and Aurioso worked closely with Defendant Iannaccone in the day-to-day operations of the Restaurant and management of workers. *Id.* ¶¶ 17-24.

While working closely with Defendant Iannaccone in the kitchen, Defendant Aurioso witnessed Defendant Iannaccone's use of racial epithets and threats of deportation directed against the workers. Amended Complaint ¶¶ 17-18, 127. Additionally, the workers also allege that Defendant Coppola was likely to have known about such actions given her work in the Restaurant. Amended Complaint ¶¶ 14, 17-18. In the alternative, as owner of the business, Defendant Coppola should have known that her restaurant utilized forced labor. Amended Complaint ¶¶ 12, 15.

Defendants Aurioso and Coppola also benefitted from their participation in Goodfellas Restaurant sufficiently to be held liable under TVPRA. Receipt of labor for "meager wages" alone are sufficient to establish benefit under the statute. *Lagasan v. Al-Ghasel,* 92 F. Supp. 3d 445, 455 (E.D. Va. 2015) ("Plaintiff shows that defendants knowingly benefited from their participation in the trafficking venture that violated the TVPRA by receiving plaintiff's labor for meager wages."). Furthermore, the text of the statute does not require a showing of "financial" benefit for liability. Benefit, rather, is explicitly characterized broadly to include receipt of "anything of value" derived from the practice of forced labor. 18 U.S.C. § 1589(b). *See United States v. Toviave*, No. 11-20259, 2013 WL 474528, at *1 (E.D. Mich. Feb. 7, 2013) ("The statute then details four methods of providing or obtaining the relevant labor or service. None of these methods make reference to an economic or financial benefit." (citation omitted)).

As owner of the Restaurant, Defendant Coppola gained financial benefit from the Forced Labor Plaintiffs' forced labor. By forcing the Forced Labor Plaintiffs to perform

dangerous tasks at a risk to their health, Defendants Aurioso and Coppola retained profits that they would otherwise have needed to spend to comply with the law and provide for the safety and security of workers in their restaurant (e.g., needing to hire additional workers, purchase equipment to lift heavy boxes safely, provide adequate work place protections or safety tools like gloves). Additionally, by using forced labor to induce the Forced Labor Plaintiffs to stay at exceedingly low-paying jobs, Defendants Coppola and Aurioso benefited by extracting value from the Forced Labor Plaintiffs' labor that they would have otherwise had to compensate them for under federal and state minimum wage and overtime laws. As Defendants Aurioso and Coppola are liable for forced labor under 18 U.S.C. § 1589(b), their motion to dismiss the forced labor claim should be denied.

> **D.   The Workers Sufficiently Allege That Defendants Violated The Racketeering Influenced Corrupt Organizations Act**

The Workers allege all Defendants, including Defendants Coppola and Aurioso, "organized and participated in a criminal worker exploitation scheme designed to systemically pay illegally low wages and exploit workers for personal profit" in violation of the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). Amended Complaint ¶ 129. Defendants Coppola and Aurioso, like Defendant Iannaccone, argue that the pleadings "are insufficient to establish a cause of action" on the theory that the predicate acts alleged in the Amended Complaint are insufficient to sustain a RICO claim. Goodfellas Motion to Dismiss, 13. As Defendants Coppola and Aurioso have incorporated by reference Defendant Iannaccone's arguments for dismissing the RICO claim, *id.*, the Workers hereby incorporate their responses to Defendant Iannaccone's arguments. Workers' First Memorandum in Opposition 19-23.

The Workers have sufficiently pled forced labor and witness tampering, the predicate acts that Defendants challenge. Even without these predicate acts, however, the predicate acts that Defendant Iannaccone does not challenge and against which Defendants Coppola and Aurioso offer no argument—robbery or extortion and mail and wire fraud—are sufficient to sustain the Workers' RICO claim against this motion.

Defendants Coppola and Aurioso, like Defendant Iannaccone, do not dispute that the Workers' allegations that the Defendants participated in mail and wire fraud under 18 U.S.C. §§ 1341 and 1343 by submitting fraudulent state and federal tax returns, *see* Amended Complaint ¶ 141(d), are adequate to state a claim for relief under RICO. *See* Iannaccone Motion 30 (claiming that all alleged predicate acts, other than those involving forced labor and witness tampering, "are [not] acts by Defendant Iannacone [sic]"); Goodfellas Motion to Dismiss 13. Defendants Coppola and Aurioso also do not dispute the adequacy of Workers' allegations regarding the predicate act of robbery or extortion under 18 U.S.C. § 1951—beyond stating that those allegations, along with witness tampering, "are not directed toward" them. Goodfellas Motion to Dismiss, 13.

The Workers *did* direct those allegations toward Defendants Coppola and Aurioso, however. The Amended Complaint clearly states that "*[t]he Defendants* knowingly and willfully committed . . . tampering with a witness, in violation of 18 U.S.C. § 1512 . . . robbery or extortion of Workers' property, in violation of 18 U.S.C. § 1951 . . . [and] mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343." Amended Complaint ¶ 141 (emphasis added); *see also* ECF No. 22, Rico Case Statement, 7 ("The fraudulent misrepresentations employing the mails and/or wires were made by Defendants Coppola and Iannaccone . . . ."); *id.* at 11 ("Defendants Coppola, Iannaccone,

and Aurioso are all members of the racketeering enterprise as well as perpetrators of and conspirers in the racketeering activity."); *id.* at 14 ("Defendant Coppola . . . and Defendant Iannaccone . . . conspired in the instant case with Defendant Aurioso . . . to profit from paying Plaintiffs far less than the wages to which they were legally entitled for the hours of work they performed.").

Allegations of these predicate acts—the sufficiency of which Defendants Coppola and Aurioso have not challenged—are enough to defeat Defendants Coppola and Aurioso's attempt to dismiss the RICO claim against them. Moreover, the one alleged predicate act that Defendants Coppola and Aurioso do challenge as legally insufficient, forced labor, is adequately alleged. *See* Part C, *supra*. Defendants Coppola and Aurioso are liable for knowingly benefitting from the forced labor perpetrated by Defendant Iannacconne.

No Defendant has offered any arguments against the Workers' RICO claim beyond challenging the sufficiency of the predicate acts. Because the Workers have sufficiently pled the necessary predicate acts, the Defendants' motion to dismiss the RICO claim should be denied.

### E.    The Amended Complaint States A Claim Of Discrimination Under § 1981 Against Defendants Aurioso And Coppola

The Amended Complaint sufficiently alleges that Defendants Aurioso and Coppola, along with Defendant Iannaccone, were joint employers of Workers Perez, M. Morales, Ceron, and Gonzalez (the "Section 1981 Plaintiffs") under 42 U.S.C. § 1981. The Amended Complaint alleges a host of conduct by Defendant Iannaccone that created a hostile work environment, *see* Amended Complaint ¶¶ 45-46, 58, 62-63, 70, 81, 88, 149-152, conduct for which Defendants Aurioso and Coppola are liable as joint

17

employers. The Amended Complaint thus states a claim under § 1981 against Defendants

Aurioso and Coppola. In addition, the Section 1981 Plaintiffs also sufficiently alleged

that Defendants Aurioso and Coppola participated in the discrimination alleged in the

claim under § 1981, and Defendants are simply incorrect to argue that there is an

administrative exhaustion requirement for § 1981 claims.

### 1.   Defendants Aurioso And Coppola Are Employers Under § 1981

Defendants Aurioso and Coppola were employers of the Section 1981 Plaintiffs

for the purposes of employment discrimination law during the relevant period. A

common law agency test governs employer liability under Title VII. *See Gulino v. N.Y.*

*State Educ. Dept.*, 460 F.3d 361, 371 (2d Cir. 2006). Section 1981 and Title VII are

subject to the same legal standards. *See e.g.*, *Patterson v. McLean Credit Union*, 491 U.S.

164 (1989) (applying Title VII analytical framework to § 1981 discrimination claim);

*Olatunji v. Dist. of Columbia*, 958 F. Supp. 2d 27, 31 (D.D.C. 2013) ("Courts analyze

Title VII and Section 1981 employment discrimination claims under similar legal

standards."). The standards for employer status and employer liability under Title VII are

thus applicable here under § 1981.[5] As alleged in the Amended Complaint, Defendants

Aurioso and Coppola easily meet the standard set out in *Gulino* for employer liability.

---

[5] Under Title VII, employers are liable for employment discrimination against a plaintiff, with employer defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b); *see also Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995) (asserting the term employer is "sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether the party may technically be described as an 'employer' . . . at common law."); *Lima v. Addeco*, 634 F. Supp. 2d 394, 399 (S.D.N.Y. 2009) (holding definition of employer is "construed liberally for Title VII purposes and does not require a direct employer/employee relationship.").

The Second Circuit's common law agency test for determining employer status under Title VII tracks the thirteen factors set out in the U.S. Supreme Court's decision in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989).[6] *Gulino*, 460 F.3d at 371. The Circuit has clarified that "[a]lthough no one of these factors is determinative, the common-law element of control is the principal guidepost that should be followed." *Id.* (citation omitted). "In balancing the *Reid* factors, a court must disregard those factors that, in light of the facts of a particular case, are (1) irrelevant or (2) of 'indeterminate' weight." *Eisenberg v. Adv. Relocation & Storage, Inc.*, 237 F.3d 111, 114 (2d Cir. 2000).

Individuals may have more than one employer for the purposes of Title VII liability. *See Gyrga v. Ganzman*, 991 F. Supp. 105, 108 (E.D.N.Y. 1998) ("[W]here two entities have an integrated economic relationship and exercise common control over employment practices . . . each may be held liable for the other's discriminatory acts and policies as an integrated enterprise." (citations omitted)); *see also*, *Dortz v. City of New York*, 904 F. Supp. 127, 144 (S.D.N.Y. 1995).

The 1981 Plaintiffs' allegations in the Amended Complaint regarding Defendants Aurioso and Coppola easily meet the employer standard set forth in *Reid* and adopted by the Second Circuit in *Gulino*. The Workers allege that Defendants Iannaccone, Aurioso, and Coppola (the "Individual Defendants") all had the "power to hire, fire, supervise, and determine amount of pay, role, and responsibilities of the employees of Goodfellas

---

[6] The thirteen factors are as follows:

> [T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Reid*, 490 U.S. at 751-52; *accord Gulino*, 460 F.3d at 371.

Restaurant"; "all participated in overseeing the operations of the Restaurant at all relevant times"; "[c]ollaboratively determined work schedules for all Plaintiffs"; "were joint and/or integrated employers within the meaning of 29 U.S.C. § 203 and 29 C.F.R. § 791.2"; and "were employers within the meaning of Conn. Gen. Stat. §§ 31-58(e) and 31-71a(1)." Amended Complaint ¶¶ 18-20, 102, 111.

In particular, the Section 1981 Plaintiffs sufficiently allege that Defendants Aurioso and Coppola exercised "control" over the workers. Defendants Aurioso and Coppola both determined the roles, responsibilities, and work schedules of the Section 1981 Plaintiffs and "participate[d] in overseeing the operations of the Restaurant." *Id.* ¶ 18.

Considering key factors from *Reid*:

First, the "location of the work" supports employer status insofar as the Individual Defendants and the Section 1981 Plaintiffs all worked on the same premises:

Second, "[t]he duration of the relationship between the parties" supports employer status given that the Section 1981 Plaintiffs allege that their relationship with the Individual Defendants existed throughout their employment at the Restaurant, "at all relevant times" of the complaint. *Id.* ¶¶ 3-8.

Third, "[w]hether the hiring party has the right to assign additional projects to the hired party" supports employer status because the Individual Defendants determined the roles, responsibilities, and work schedules of the Section 1981 Plaintiffs. *Id.* ¶¶19-20.

Fourth, "[t]he extent of the hired party's discretion over when and how long to work" also supports employer status insofar as the Individual Defendants determined the

Section 1981 Plaintiffs' work schedules, and even sometimes called workers in on their days off. *Id.* ¶ 56.

Fifth, "[t]he method of payment" supports employer status given that the Individual Defendants determined the Section 1981 Plaintiffs' amount of pay. *Id.* ¶ 19.

Sixth, "[t]he hired party's role in hiring and paying assistants" also supports employer status because the Section 1981 Plaintiffs did not exercise such prerogatives that are sometimes characteristic of an independent contractor relationship.

Seventh and Eighth, "[w]hether the work is part of the regular business of the hiring party" and "whether the hiring party is in business" both support employer status given the Section 1981 Plaintiffs' allegations that the Individual Defendants jointly oversee and operate the Restaurant. *Id.* ¶¶ 18-20, 123 (asserting that that Individual Defendants operate an "enterprise" under RICO).

Ninth, "[t]he provision of employee benefits" is inapplicable because no Defendants offered Workers health or other benefits.

Finally, the "tax treatment of the hired party" is inapplicable because the Section 1981 Plaintiffs allege that all Defendants failed to pay applicable taxes. *See* Amended Complaint ¶¶ 42, 54, 67, 78, 85, 95.

In sum, the standard articulated in *Reid* and clarified by the Second Circuit in *Gulino* and *Eisenberg* overwhelmingly supports the conclusion that all of the Individual Defendants—including Defendants Aurioso and Coppola—were the Section 1981 Plaintiffs' employers for purposes of § 1981.

> **2.      Defendants Aurioso And Coppola Are Liable As Joint Employers For The Discrimination Against Section 1981 Plaintiffs**

Defendants Aurioso and Coppola are also liable as joint employers under § 1981 for the discriminatory conduct of Defendant Iannaccone. Under joint employer doctrine, liability may be found when "separate legal entities have chosen to handle certain aspects of their employer-employee relationships jointly." *St. Jean v. Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301, 307 (S.D.N.Y. 2013). At least five Court of Appeals Circuits have recognized joint employer liability under Title VII. *See, e.g.*, *Butler v. Drive Automotive Industries of America*, 793 F.3d 404, 408 (4th Cir. 2015) (recognizing that joint employer liability "serves Title VII's purpose of eliminating discrimination in employment based on race, color, religion, sex, or national origin"); *Torres-Negrón v. Merck & Co.*, 488 F.3d 34, 40 n. 6 (1st Cir. 2007); *Bristol v. Board of County Commissioners*, 312 F.3d 1213, 1218 (10th Cir. 2002) (holding that two parties can be considered joint employers and therefore both be liable under Title VII if they "share or co-determine those matters governing the essential terms and conditions of employment"); *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997) (drawing guidance on Title VII joint employer status from NLRB rulings to find "joint employment status when two entities exercise significant control over the same employees"); *Virgo v. Riviera Beach Assoc.*, 30 F.3d 1350, 1360 (11th Cir. 1994).

The Second Circuit has also favorably discussed joint employer standards in the context of Title VII. In *Arculeo v. On-Site Sales & Marketing, LLC*, the Second Circuit Circuit considered whether a joint employment doctrine, applied to Title VII, could be invoked to meet the fifteen-employee threshold in that statute. 425 F.3d 193, 198-203 (2d Cir. 2005). The court there explained joint employer doctrine and applied it to the case at hand but, finding that the putative joint employer still would not meet the threshold, the

court declined to rule this doctrine applicable. *Id.* Additionally, a recent summary order from the Second Circuit has recognized the applicability of joint employer liability in Title VII cases. *Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 30 (2d Cir. 2015) (quoting *St. Jean*, 963 F. Supp. 2d at 308).

While the Second Circuit has not ruled on the proper test for Title VII joint employer liability, other district courts within the Second Circuit have explored this question. In *St. Jean*, Judge Sweet considered two possible tests. 963 F. Supp. 2d at 307. The first was the economic reality test applied by the Second Circuit in *Zheng v. Liberty Apparel*. *Id.* The second test would find an employment relationship where "there is sufficient evidence that the defendant had immediate control over the formal employer's employees." *Id.* at 308. "Relevant factors may include commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Id.* (internal quotation marks omitted).

Under either test, the Section 1981 Plaintiffs have sufficiently alleged that Defendants Coppola and Aurioso are joint employers for the purpose of the § 1981 claim. Under the economic reality test, meeting the *Carter* factors is sufficient to meet the standard of employer. *Zheng*, 355 F.3d at 69, 71, 79. As alleged in the Amended Complaint, Defendant Aurioso had the power to hire and fire, supervise workers and their work schedules and conditions of employment, and determine rate and method of pay to the Section 1981 Plaintiffs. Amended Complaint ¶¶ 13, 17-20. As an owner of the Restaurant, Defendant Coppola also had the power to hire, fire, supervise, and determine the amount of pay, role, and responsibilities of the Section 1981 Plaintiffs. *Id.* ¶¶ 12, 18-

20. The Section 1981 Plaintiffs alleged that the Defendants failed to keep adequate records collectively. *Id.* ¶ 21.

Under the immediate control test, the Section 1981 Plaintiffs have sufficiently alleged that Defendants Coppola and Aurioso are liable as joint employers, pointing to both Defendants' control over hiring, firing, discipline, pay, and supervision. *Id.* ¶¶ 12-14, 18-20. If Defendants Coppola and Aurioso did not have control over records, it would only be because Defendants "failed to keep adequate records as required by law." *Id.* ¶ 12. Thus, under either of the tests for joint employer liability for discrimination claims considered in *St. Jean*, Defendants Coppola and Aurioso are joint employers alongside Defendant Iannaccone.

Because Defendants Coppola and Aurioso are joint employers of the Section 1981 Plaintiffs for purposes of § 1981, they are liable for the discriminatory conduct allegedly committed by Defendant Iannaccone. *See, e.g.*, *id.* ¶¶ 45-46 ("Defendant Iannaccone often called Mr. M. Morales a 'fucking Mexican' and other derogatory racial epithets"); *id.* ¶ 58 ("Defendant Iannaccone often threatened Mr. Perez in these instances, yelling profanities and racial slurs at him"; "Defendant Iannaccone screamed at Mr. Perez 'you fucking Mexican, come on I know you can do it!' or words to that effect."); *id.* ¶ 62 ("Defendant Iannaccone would frequently use racist and homophobic language towards Mr. Perez and the other Workers. He routinely screamed at them, referring to them as 'dogs,' 'fucking Mexicans,' 'animals,' and 'faggots,' in both English and Spanish."); *id.* ¶ 70 ("Defendant Iannaccone often yelled insults, profanities, and slurs at Mr. U. Morales and others"); *id.* ¶ 81 ("Defendant Iannaccone often referred to Mr. Ceron as 'fucking Mexican,' 'pendejo,' and other derogatory racial epithets."); *id.* ¶ 88 (explaining that

24

Defendant Iannaccone's language produced a hostile and discriminatory workplace environment); *id.* ¶¶ 150-52 (alleging that this conduct was not welcome, was motivated by the Section 1981 Plaintiffs' race and imputed national origins, and that it was severe or pervasive enough to create a hostile work environment). Defendants' motion to dismiss should therefore be denied. The Section 1981 Plaintiffs have sufficiently alleged that Defendants Coppola and Aurioso, as joint employers with Defandant Iannaccone, are liable for discrimination under § 1981.

### 3. The Workers Sufficiently Allege Coppola And Aurioso's Conduct Violated § 1981

Section 1981 Plaintiffs sufficiently allege that Defendants Coppola and Aurioso participated in the discriminatory actions that violated § 1981. Defendants Coppola and Aurioso are therefore liable under the statute. In the Amended Complaint, the Workers allege that "[t]he Defendants created a hostile and hateful working environment, berating and belittling their workers with racist, xenophobic, and homophobic slurs." Amended Complaint 1. The Workers further allege that "Defendants harassed and discriminated against Mr. Ceron on the basis of his race and perceived national origin while he was working at the restaurant, in violation of Connecticut and federal antidiscrimination law." *Id.* ¶ 80. The Amended Complaint therefore adequately states that Defendants Coppola and Aurioso were party to the discriminatory actions. Defendants' argument that the Section 1981 Plaintiffs' have not alleged that Defendants Coppola and Aurioso engaged in discrimination is simply incorrect, and their motion to dismiss should be denied.

### F. This Court Has Jurisdiction Over The Workers' Discrimination Claims Because § 1981 Has No Administrative Exhaustion Requirement

Defendants Aurioso, Coppola, and Goodfellas Cafe, LLC argue that the Section 1981 Plaintiffs' discrimination claims are "not within the jurisdiction of this Court." Goodfellas Motion to Dismiss 14 (citing Iannaccone Motion 30). This assertion, however, is founded on a fundamental misstatement of the Section 1981 Plaintiffs' claims. The Section 1981 Plaintiffs seek redress for the Defendants' discrimination *not* under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as Defendants erroneously claim, but under 42 U.S.C. § 1981.

Defendants Aurioso, Coppola, and Goodfellas Cafe, LLC fail to advise the Court that unlike with Title VII, § 1981 has no administrative exhaustion requirement. No such requirement exists in the statute, and courts have long recognized that there is no requirement that victims of discrimination seek administrative remedies before bringing suit under § 1981. *Goss v. Revlon, Inc.*, 548 F.2d 405 (2d. Cir. 1976) ("[T]he failure of a claimant to properly pursue his administrative remedies before the EEOC and the appropriate state agency . . . does not preclude him from instituting an action under § 1981."); *Grant v. Morgan Guarantee Trust Co. of New York*, 548 F. Supp. 1189 (S.D.N.Y. 1982) (same); *Brown v. New Haven Civil Serv. Bd.*, 474 F. Supp. 1256 (D. Conn. 1979) (same). It is clear from both the statutory text and from precedent that the Section 1981 Plaintiffs' discrimination claims under § 1981 have no administrative exhaustion requirement. Defendants offer no contrary authority. This Court therefore has jurisdiction over these claims.[7]

---

[7] Defendants assert that Defendant Goodfellas Cafe, LLC did not maintain ownership or control over the Restaurant for the relevant period and that all causes of action against it should consequently be dismissed. Goodfellas Motion to Dismiss 7-8. Apart from the mistaken identification of 42 U.S.C. § 1981 with Title VII, Defendants offer no further argument with regard to the liability of Defendant Goodfellas Cafe, LLC under § 1981. This argument fails because the Section 1981 Plaintiffs have sufficiently alleged, at the stage

### G.   The Workers Have Sufficiently Alleged That Goodfellas Cafe, LLC Is A Proper Defendant

As alleged in the Amended Complaint, "Defendant Goodfellas Cafe, LLC is a Limited Liability Company that registered in Connecticut in 2005 and that, at least until 2011, owned and operated a restaurant in New Haven, Connecticut called Goodfellas Restaurant, which was located at 758 State Street, New Haven . . . ." Amended Complaint ¶ 9. The Workers stated in the Amended Complaint that, "[u]pon information and belief, Goodfellas Cafe, LLC continued to be an owner and operator of Goodfellas Restaurant during times relevant to this action." *Id.*; *see also id.* ¶ 11 ("Goodfellas Cafe, LLC . . . continues to have an ownership interest in [Goodfellas Restaurant].").

Defendant Gennaro Iannaccone is the sole member of Goodfellas Cafe, LLC. *Id.* ¶ 11. Defendant Iannaccone continues to be an owner of Goodfellas Restaurant, repeatedly representing himself as such in promotional materials and on the Restaurant's website. *See* Amended Complaint ¶¶ 14-18; Workers' First Memorandum in Opposition 11.[8]

---

of a motion to dismiss, that Goodfellas Cafe, LLC is a joint employer subject to liability for the conduct of its supervisory employees. The Section 1981 Plaintiffs allege that Goodfellas Cafe, LLC "continued to be an owner and operator of Goodfellas Restaurant during times relevant to this action." Amended Complaint ¶ 9. For the purposes of a motion to dismiss, which predates the ability of Workers to rely upon the fruits of discovery, the Court must accept as true all factual allegations in the Complaint and construe all reasonable inferences therefrom in the light most favorable to plaintiffs. *Papelino*, 633 F.3d at 85 n.1. Insofar as Goodfellas Cafe, LLC maintains a stake in and ability to direct the affairs of the Restaurant, it constitutes an employer under § 1981 and is subject to joint employer liability for the conduct of Defendants Iannaccone, Aurioso, and Coppola against each of the individual defendants, *see* Part E.2, *supra*. The Amended Complaint thus sufficiently states a claim against Goodfellas Cafe, LLC under § 1981.

[8] *See also* Workers' First Memorandum in Opposition, 11 n.4 ("Included in the Amended Complaint are screenshots from the website of Goodfellas Restaurant in which Defendant Iannaccone is identified as 'Owner, Chef' and states, in his biography, that he 'operate[s]' the Restaurant 'with his long time love, Andrea Coppola.' Amended Complaint ¶ 15 (also available at www.goodfellasrestaurant.com/gerry (last visited October 3, 2015)). In addition to the allegations in the Amended Complaint, press accounts repeatedly refer to Defendant Iannaccone as the 'owner.' *See, e.g.,* Joe Amarante, *New Haven's Café Goodfellas to Move into New State Street Space*, New Haven Register, Feb. 17, 2012 (describing the Restaurant as 'his [Iannaccone's] Café Goodfellas' and quoting Iannaccone referring to it 'my restaurant.'). In a video attached to the story, Mr. Iannaccone is identified as 'Owner Gennaro Iannaccone.' *Id.* A 2014 article identifies the 'proprietors of Goodfellas' as 'chef Gennaro 'Gerry' Iannaccone and Andrea Coppola.' Douglas P. Clement, *Goodfellas Gives Connecticut Food Bank $11,900 From Caymus Wine*

These facts "permit a reasonable inference" that Goodfellas Cafe, LLC continues to have an ownership interest in Goodfellas Restaurant and, accordingly, that the Workers have properly stated a series of claims against Goodfellas Cafe, LLC. *Anderson News*, 680 F.2d at 168.

Defendants' arguments fail to demonstrate the insufficiency of the Workers' allegations. Defendants claim that they have provided the Workers with "information substantiating the fact that 'Goodfellas Restaurant' has been owned and operated by AC702, LLC since November 21, 2011." Iannaccone Motion 2 (citing ECF No. 40-2, Exhibits to Defendant Iannaccone's Memorandum in Support of Motion to Dismiss [hereinafter "Iannaccone Exhibits"], Exhibit A, City of New Haven Trade Name Certificate for AC702, LLC); *see also* Iannaccone Exhibits, Exhibit B, Secretary of the State Record for AC702, LLC. This is improper. It is well-established that "when matters outside the pleadings are presented on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment and afford all parties the opportunity to present supporting material." *Shah v. Wilco Systems, Inc.*, 126 F. Supp. 2d 641, 646 (S.D.N.Y. 2000). If the motion to dismiss of Goodfellas Cafe, LLC is converted to one for summary judgment, then Plaintiffs should have the opportunity to conduct discovery before responding. *See* Fed. R. Civ. P. 56(d).

---

*Dinner*, Connecticut Magazine, Nov. 5, 2014. A May 2015 TV segment identifies him as 'Chef and owner Gennaro 'Gerry' Iannaccone . . . from Goodfellas.' *In the Bender Kitchen: Italian in CT with Goodfellas!*, WTNH, May 5, 2015, http://wtnh.com/2015/05/05/in-the-bender-kitchen-italian-week-with-goodfellas/. A review of the Restaurant, also from May 2015, refers to 'chef-owner Gennaro 'Gerry' Iannaccone,' whom the reviewer describes as 'his own master in great surroundings,' referencing the Restaurant's new location. Spencer Caldwell, *Goodfellas Restaurant, a New Haven Favorite*, The Hartford Courant, May 22, 2015.").

Even if it were proper to consider this outside information, Defendants' evidence establishes only that AC702, LLC has an ownership interest in Goodfellas Restaurant. The Defendants have provided *no* evidence demonstrating that Goodfellas Cafe, LLC does not continue to have an ownership interest in the Restaurant. The Defendants formed AC702, LLC seven months after the U.S. Department of Labor concluded its second investigation of Goodfellas, ordering the Restaurant, Defendant Iannaccone and Defendant Aurioso to pay $23,636.10 in back wages. Amended Complaint ¶¶ 32, 34. The new LLC's only member was Defendant Iannaccone's "long time love," Defendant Coppola. Iannaccone Exhibits, Exhibit B, Secretary of the State Record for AC702, LLC; Workers' First Memorandum in Opposition 11 n.4. Now, based solely on the facts that the business address of Goodfellas Cafe, LLC does not correspond with the current address of Goodfellas Restaurant and that the Restaurant now uses the name "Goodfellas Restaurant" instead of "Café Goodfellas," the Defendants ask this Court to dismiss all claims against Goodfellas Cafe, LLC. *See* Iannaccone Motion 12.

The Workers have adequately alleged in the Amended Complaint that the sole member of Goodfellas Cafe, LLC continues to be an owner of Goodfellas Restaurant. Defendants' motion to dismiss all claims against Goodfellas Cafe, LLC should be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss the Amended Complaint of Defendants Aurioso, Coppolo, and Goodfellas Cafe, LLC should be denied in its entirety.

Respectfully,

<div style="margin-left: 40%;">

_____/s/ Michael J. Wishnie_____
Michael J. Wishnie, Supervising Attorney (ct27221)
A. Nicole Hallett, Supervising Attorney (ct28495)
Will Bloom, Law Student Intern
Jordan Laris Cohen, Law Student Intern
Zachary Manfredi, Law Student Intern
Adan Martinez, Law Student Intern
Joshua Nuni, Law Student Intern

JEROME N. FRANK
LEGAL SERVICES ORGANIZATION
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090
Phone: (203) 432-4800

*Counsel for the Plaintiffs*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was e-filed by Plaintiffs and served by regular mail on anyone unable to accept electronic filing, on November 12, 2015. Notice of this e-filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated in the Notice of Electronic filing. Parties may access this filing through the Court's CM/ECF System.

Attorney Donn A. Swift (ct05247)
Attorney Matthew D. Popilowski (ct28869)
Lynch, Traub, Keefe & Errante, P.C.
52 Trumbull Street
New Haven, Connecticut 06510
Phone: (203) 787-0275
e-mail: dswift@ltke.com
e-mail: mpopilowski@ltke.com

For the Defendants, Goodfellas Cafe, LLC, Andrea Coppola, Francesco Aurioso, and AC702, LLC.

William A. Ryan (ct15530)
Eric M. Desmond (ct27798)
Ryan & Ryan, LLC
900 Chapel Street, Suite 621
New Haven, Connecticut 06510
Telephone: (203) 752-9794
Facsimile: (203) 785-1547
e-mail: william.ryan@ryan-ryan.net
e-mail: eric.desmond@ryan-ryan.net

For the Defendant, Genarro Iannaccone.

/s/ Michael J. Wishnie
Michael J. Wishnie, Esq. ct27221
Jerome N. Frank Legal Services Organization
Yale Law School
127 Wall Street
New Haven, CT 06511
Telephone:  (203) 432-4800
Facsimile:  (203) 432-1426
Email: michael.wishnie@yale.edu